United States District Court
Southern District of Texas
**ENTERED**
December 10, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON RIVENBARK, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-3786 |
| | § | |
| JPMORGAN CHASE & CO., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiffs brought this Fair Labor Standards Act ("FLSA") suit as a putative collective action on behalf of themselves and other employees of JPMorgan Chase call centers. In addition to alleging violations of the FLSA, Plaintiffs seek recovery under Texas common law, Ohio's Minimum Fair Wage Standards Act, and the Ohio Prompt Pay Act. (Doc. No. 13 at 1.) Pending before the Court is Plaintiffs' motion for conditional class certification. (Doc. No. 48.)

I. BACKGROUND

Plaintiffs claim that call-center employees were not paid overtime wages for the 2.5-5 hours of "off-the-clock" work they did each week. (Doc. No. 13 ¶ 28.) Specifically, Plaintiffs allege that call-center employees "are required to start and log into their computer, open eight (8) to ten (10) different Chase computer programs, log in to each Chase program, and ensure that each Chase program is running correctly, all of which can take up to thirty (30) minutes to one (1) hour to have ready in order to take their first phone call." (Doc. No. 13 ¶¶ 29–30.) That pre-call work occurs before the shift starts, and Plaintiffs allege it is required by Chase's corporate policy. (Doc. No. ¶¶ 32–33.) Plaintiffs have filed numerous "Consent to Join a Collective/Class Action" forms

1

signed by other call-center employees. (Doc. Nos. 4, 10–12, 14–19, 21–23, 25, 28, 31, 34–38, 40, 42–43, 49, 67–68.)

Defendant argues that one of the named plaintiffs, Kaylah Casuccio, as well as most of the opt-in plaintiffs, are subject to binding arbitration agreements with collective action waivers. (Doc. No. 20 at 18; Doc. No. 26 at 2.) Defendant also asserts that Plaintiffs were required to accurately record their hours worked, and that Defendant did not know they were working extra hours. (Doc. No. 20 at 15–19.)

### A. MOTION FOR CONDITIONAL CLASS CERTIFICATION

Plaintiffs seek to conditionally certify a class of "all current and former non-exempt call-center employees of JPMorgan Chase & Co. who worked at any time from December 14, 2014 through the final disposition of this matter." (Doc. No. 48 at 1.) As evidence that they have shown that "aggrieved individuals exist" and want to opt in to the suit, Plaintiffs point to the seventy-eight putative class members that have filed their written consent to join the action. (Doc. No. 48 at 6.) Plaintiffs believe the other employees are "similarly situated," because (1) they were all subject to the same early-arrival policy, (2) they all performed the same type of work, (3) they were all paid hourly, (4) they were all subject to a uniform company-wide pay policy, (5) they all followed the same log-in procedure, and (6) they were all required to arrive early so that they could be "call ready" when their shift started. (Doc. No. 48 at 7.)

Plaintiffs include declarations from Chase call-center employees "[a]cross fifteen facilities and in multiple states" alleging that they were required to arrive early so that they could be "call ready" at the time their shift was scheduled to start. (Doc. No. 48.) One of Plaintiffs' declarations is from a former manager at Chase who trained call-center employees. (Doc. No. 48-42.) The

declaration states that "in accordance with Chase's adherence policy, [he] required his employee-team-members to arrive early so they could be ready to take their first call as soon as their shift began." (Doc. No. 48 at 9.) The former manager alleges that this policy was handed down by his superiors, who oversaw the entire department. (Doc. No. 48-42 ¶¶ 13–14, 19.) Call-center managers also had programs available to track whether employees were "call ready" and when they were actively on the phone. (Doc. No. 48-41 at 94:16–99:21, 100:7–102:10)

### 1. *Should the class be company-wide?*

Plaintiffs argue that their evidence is sufficient to support company-wide conditional certification. (Doc. No. 48 at 16.) Plaintiffs believe that their corroborating declarations by employees from almost all the call-center locations operated by Defendant, which describe similar company-wide FLSA violations, show a reasonable basis for concluding that the same policy applies to multiple locations. (Doc. No. 48 at 1; Doc. No. 59 at 3.) Plaintiffs contend that any differences in job duties between putative class members is irrelevant, because "the alleged FLSA violations in this case do not turn on the nature of the work performed." (Doc. No. 59 at 4.) Plaintiffs argue that Defendant's objections go to the merits of the case and are not properly considered at the pre-discovery notice stage. (Doc. No. 59 at 4.)

Defendant argues that nationwide certification is inappropriate here, because many issues would need to be individually determined, and the only company-wide policy in existence specifically requires all employees to be paid for log-in time. (Doc. No. 53 at 1, 5–6, 11–12.) Defendant provides declarations from employees who attest that "they have never been instructed to be call-ready at the start of their shift and have been paid for all computer log-in time." (Doc. No. 53 at 1, 5–6, 11–12.) The issues Defendant claims the Court would need to individually assess

include: whether an employee is expected to be "call-ready" at the start of her shift; whether an employee records and is paid for log-in time; whether and to what extent an employee takes inbound calls; whether an employee arrives at work early; whether employees who arrive early spend their pre-shift time logging in; whether log-in time is *de minimis* under FLSA; and whether an employee's manager told them to arrive early to log in. (Doc. No. 53 at 2.)

### 2. *Should the notice be sent to individuals subject to arbitration agreements?*

Plaintiffs concede that some of the putative class members and individuals who submitted declarations signed arbitration agreements and may not be able to join the class. (Doc. No. 48 at 17–18.) Plaintiffs request that notice be sent out to all putative class members, including those covered by arbitration agreements, because the Court has not yet determined that the agreements are enforceable, and because they should be notified of their FLSA rights even if they cannot join the collective action. (Doc. No. 48 at 20; Doc. No 59 at 10.)

Defendant argues that the Supreme Court's decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), prevents notice from being sent to those putative class members who have signed binding arbitration agreements. (Doc. No. 53 at 3.) According to Defendant, as of July 2018, only ten of the approximately seventy opt-in plaintiffs did not sign arbitration agreements. (Doc. No. 53 at 8.) Defendant interprets *Epic Systems Corp.* as establishing that that "individuals who have agreed to binding arbitration with a collective action waiver, as here, *must* be excluded from this litigation." (Doc. No. 53 at 27.) According to Defendant, the sole purpose of notice in FLSA claims is to allow putative class members to "make informed decisions about whether to join." (Doc. No. 65 at 2.) Because putative class members who have signed enforceable arbitration

4

agreements would not be able to join the collective action, notice would serve no valid purpose under FLSA. (Doc. No. 53 at 27.)

    *3. Form of notice*

Plaintiffs have submitted a proposed notice, which they amended in their Reply. (Doc. No. 59-2.) Plaintiffs propose that the notice be sent via first-class mail and e-mail, and posted in Chase call centers. Plaintiffs request that putative class members have the option of signing their consent forms electronically.

Defendant objects to several aspects of Plaintiffs' proposed notice. Defendant requests that the Court order the parties to "submit a mutually agreeable notice within 30 days" of conditional certification, "or to submit separate proposals to the Court if the parties cannot agree on one." (Doc. No. 53 at 29.)

## II.    APPLICABLE LAW

The Fair Labor Standards Act ("FLSA") allows employees to sue employers for violations of the Act's overtime provisions. Suits to recover overtime pay "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

To determine whether employees are "similarly situated" under § 216(b), most courts in the Fifth Circuit use the two-step *Lusardi* approach. *See e.g.*, *Walker v. Hongua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012). First, courts decide whether to issue notice to potential class members. *Id.* The first step is a "lenient" standard, which "typically results in conditional certification." *Id.* Courts do not consider the underlying merits of the case at the notice stage,

because discovery usually has not begun. *Id.* "The first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Aguirre v. SBC Commc'ns, Inc.*, No. 4:05-CV-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006).[1]

At the second stage of the *Lusardi* approach, the defendant will move to decertify the conditionally certified class. *Walker*, 870 F. Supp. 2d at 466. At that point, the court makes a "factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed." *Id.*

### III. ANALYSIS

#### A. <u>CONDITIONAL CERTIFICATION</u>

##### 1. *There is a reasonable basis for crediting the assertions that aggrieved individuals exist.*

Defendant urges us to adopt the approach of a district court in Florida, which denied conditional certification in a case alleging similar facts. *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-0470, 2012 WL 6196035 (M.D. Fla. Dec. 12, 2012). The plaintiff claimed "he was required to arrive at work up to 15 minutes prior to his shift to ensure that his computer was on, multiple programs were loaded, and that he had read relevant emails and memorandum before taking his first telephone case at the beginning of his shift." *Id.* at *2. The court denied the motion

---

[1] The third prong, that individuals want to opt into the lawsuit, is inconsistently applied. *See Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 471–72 (S.D. Tex. 2012) ("Many courts have determined that plaintiffs do not need to present evidence that potential opt-in plaintiffs desire to opt-in. Other courts require a showing [that] at least a few individuals want to join.").

for conditional class certification on the grounds that the plaintiff had not met his burden to show that other aggrieved individuals existed and that those individuals were similarly situated. The court ruled that there was insufficient evidence that others existed, because

> Plaintiff has identified, at most, eleven current or former employees that either have joined, or may be interested in joining, this lawsuit. In reality, Plaintiff has submitted the declarations of just three viable opt-in plaintiffs representing only three of seventeen nationwide call centers. On the other hand, JPMorgan has submitted the detailed declarations from six company representatives and nearly 60 putative class members attesting that they are not interested in joining this lawsuit and/or are unaware of any others who desire to this lawsuit. These declarations include employees from nine of JPMorgan's call centers, including eleven declarations from employees at the Tampa call center.

*Id.* at *4 (citations omitted).

In contrast, Plaintiffs in this case have submitted declarations or depositions of *forty* putative class members. Almost all of these witnesses allege that Chase violated their FLSA rights in a similar way. The witnesses worked at fifteen different call centers—six more than the number represented by JP Morgan's declarations in *Hart*, which the court found so persuasive. The testimony submitted by Plaintiffs in this case portrays a consistent policy from management that employees be "call-ready" at the start of their shift, but that they not clock in until their scheduled start time. Among the witnesses is a former Chase call-center manager, Mr. Henry, who stated that many of his superiors emphasized the importance of ensuring employees followed the early-arrival policy. The consistency of this focus across different supervisors implies the existence of a

corporate policy instead of merely miscommunication or the idiosyncratic practices of certain managers. *See Falcon v. Starbucks Corp.*, No. 4:05-CV-0792, Doc. No. 53 at 2–3 (S.D. Tex. Nov. 29, 2005). Plaintiffs have shown a reasonable basis for crediting their assertions that aggrieved individuals exist.

>   *2. Aggrieved individuals are similarly situated to the plaintiff in relevant respects.*

Defendant alleges that any early-arrival policy is based on the whims of individual managers flouting company-wide pay policies, and thus each manager's team would be uniquely situated. While the evidence submitted by the parties conflicts on this point, Plaintiffs have submitted enough evidence to meet their burden at this stage in the case.

The declarations submitted by Plaintiffs allege a set of "meaningful identifiable facts" that "bind the claims," across different managers in different call centers in different states. *See Simmons v. T-Mobile,* 2007 WL 210008, at *8 (S.D. Tex. Jan. 24, 2007). The declarations submitted by Defendant do not defeat conditional certification, because "[a]n employer should not be allowed to escape class liability simply because some managers do not commit FLSA violations . . . ." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 537 (S.D. Tex. Jan. 15, 2008).

Defendant also alleges that differences in employees' job descriptions preclude them from being similarly situated. However, "[a] class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations of the case." *Minyard v. Double D Tong, Inc.,* 2017 WL 5640818, at *2 (W.D. Tex. Mar. 22, 2017). Defendant focuses on differences in the amount of time employees were expected to be on the phone. However, Defendant has presented no evidence that employees' job duties did not require them to use computers. Even employees who were not expected to receive calls could

be subject to an early-arrival policy requiring them to be ready to work at their scheduled start time. Thus, the Court does not find the differences Defendant points out to be material.

The Court decided a similar FLSA case in 2005. *Falcon v. Starbucks Corp.*, No. 4:05-CV-0792. In that suit, Starbucks employees claimed the company failed to pay them overtime and encouraged them to work off the clock. *Falcon*, No. 4:05-CV-0792, Doc. No. 53 (S.D. Tex. Nov. 29, 2005). That class was conditionally certified after providing only seven affidavits corroborating the plaintiffs' allegations. *Id.* at 2. The affidavits included testimony from a manager, who swore that her superiors instructed her and other managers not to pay employees overtime. *Id.* In that case, Starbucks submitted its own affidavits contradicting the plaintiffs' allegations, and stating that there was a firm corporate policy that time worked was time paid. *Falcon*, No. 4:05-CV-0792 (Doc. No. 36-3 at 1.) ("I teach all of my partners that Starbucks does not allow working off the clock . . . .").

Plaintiffs in this case have provided more evidence supporting their allegations than the *Falcon* plaintiffs, and from a greater variety of locations and managers. The job duties in *Falcon* were much less varied than those at issue here, but those differences in job descriptions are not material to the overtime claims alleged. Thus, *Falcon* supports a finding that the aggrieved individuals in this case are similarly situated.

Neither does the *Hart* case support Defendant's argument. In Hart, the court denied conditional certification in part because aggrieved individuals were not shown to be similarly situated to the plaintiff. *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-0470, 2012 WL 6196035 (M.D. Fla. Dec. 12, 2012). The court noted in its analysis that each declarant described "widely divergent 'off-the-clock' violations, giving rise to "divergent theories of liability." *Id.* at

9

*5. The same cannot be said of the evidence submitted by Plaintiffs in this case. Unlike in *Hart,* Plaintiffs' evidence describes a coherent policy of (1) requiring employees to be "call-ready" at the start of their shift, and (2) emphasizing that employees cannot clock in before their scheduled shift start. Thus, despite the similarities in factual allegations between *Hart* and this case, the decision in *Hart* does not weigh against conditional certification here.

The Court finds that the aggrieved individuals are similarly situated to the Plaintiffs in relevant respects.

### 3. *Aggrieved individuals want to opt into the lawsuit.*

As noted above, courts do not always require plaintiffs to show interest before conditionally certifying the class. Even if this showing is mandatory, the almost eighty putative class members who have already attempted to opt in to the lawsuit satisfies this prong.

Plaintiffs have thus met their burden to show that conditional class certification is appropriate.

### B. NOTICE

#### 1. *Should notice be sent to individuals subject to an arbitration agreement?*

The parties disagree about whether notice may be sent to individuals who signed arbitration agreements. Even individuals who signed arbitration agreements including class-action waivers and delegation clauses may challenge the agreement in federal court on the narrow issue of contract formation. *See Edwards v. DoorDash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a

delegation clause exists."). Assuming Defendant is correct that notice may only be sent out to individuals who are able to join the litigation, the Court cannot determine that there is no possibility that putative class members will be able to join the suit until Defendant files a motion to compel arbitration against specific individuals. Any inconsistencies in Plaintiffs' prior statements about whether they would challenge the arbitration agreements cannot bind putative class members who had not yet opted into the litigation and were not represented by Plaintiffs' attorneys. Thus, notice should be sent out to all putative class members, including those who have signed arbitration agreements. *See Weckesser v. Knight Enterprises S.E., LLC*, 2018 WL 4087931, at *3 (D.S.C. Aug. 27, 2018) (finding that "[t]he potential opt-in plaintiffs allegedly subject to arbitration agreements have not yet joined this action, and the Court therefore has no ability to determine whether any potential arbitration agreement are enforceable against them," and deciding that the court would "address arbitration issues through a motion to compel arbitration once any opt-in plaintiffs allegedly subject to arbitration agreements have been identified.")[2]

---

[2] The Fifth Circuit cases holding that arbitrability is a threshold question in an FLSA case do not preclude this result. The Fifth Circuit held in *Reyna v. International Bank of Commerce* that arbitrability is a threshold question, such that motions to compel arbitration must be decided before motions for conditional certification, not at the decertification stage. 839 F.3d 373, 376 (5th Cir. 2016). *Reyna* was different from the case now before the Court, because the sole named plaintiff was indisputably subject to an arbitration agreement with a delegation clause, and the defendant had moved to compel arbitration. *Id.* at 376–77. These facts made the issue of arbitrability essential to the justiciability of the case, because "a court could conditionally certify a collective action solely on the basis of a claim that the plaintiff was bound to arbitrate and was therefore banned from bringing it in court in the first place." *Id.* at 377. Later, the Fifth Circuit expanded the *Reyna* holding to cases in which there was more than one named plaintiff and the arbitration agreement itself was disputed. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018). Both *Reyna* and *Edwards* are distinguishable from this case, where no motion to compel arbitration has been filed and only one of the named plaintiffs has signed an arbitration agreement. The fact that plaintiffs would remain if the Court compelled arbitration assuages any justiciability concerns.

### 2. *Form of notice*

#### a. Posting Notice at Work Sites

Courts often approve posting notice at the job sites of putative class members. *See Turner v. Nine Energy Service, LLC*, 2016 WL 6638849 (S.D. Tex. 2016). The Court authorizes the posting of notice at the job sites of putative class members, because posting notice would not be unduly burdensome for Defendant under these circumstances. *See Garcia*, 2015 WL 1737932, at *5 (approving posting because "[t]he call center is not open to the public, so there is no danger of reputational harm or other adverse impact on [defendant's] business").

#### b. Receiving Class Information Directly

Any confidentiality concerns can be managed with agreements between the parties. The Court sees no reason to doubt Plaintiffs' promise to keep putative class members' private information confidential. (Doc. No. 48-49 at 5.)

#### c. Delivery via E-mail

Although "many [courts] have taken the view that putative class members' names and addresses are sufficient to ensure that notice is received," *Garcia v. TWC Admin., LLC*, 2015 WL 1737932 (W.D. Tex. Apr. 16, 2015), email may now be a more reliable method of ensuring that notice is in fact received by putative class members. Other courts in the Fifth Circuit have approved email notice to putative class members. *See e.g., Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953 (W.D. Tex. Feb. 29, 2016); *Pacheco v. Aldeeb,* No. 5:14-CV-121, 2015 WL 15009570, at **8–9 (W.D. Tex. Mar. 31, 2015). The Court takes the same approach and authorizes delivery of notice by email.

d. Electronic Signatures

When courts allow notice to be distributed via email, they regularly allow opt-in plaintiffs to execute consent forms electronically. *Aguirre v. Tastee Kreme #2, Inc.,* No. CV H-16-2611, 2017 WL 2350064, at *8 (S.D. Tex. May 31, 2017) (adopting magistrate judge's recommendation to allow electronic signatures); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W.D. Tex. Aug. 27, 2015) (allowing electronic signatures because (1) FLSA doesn't require a signature on consent forms; (2) a federal Act prohibits denying legal effect to a signature merely because it is in electronic form; (3) a Texas law prohibits denying legal effect to a signature merely because it is in electronic form; and (4) other cases have routinely allowed electronic signatures). The Court finds it appropriate to allow putative class members to execute their consent forms electronically.

## IV. CONCLUSION

The Court **GRANTS** Plaintiffs' motion for conditional certification. The Court conditionally certifies the following class: "all current and former non-exempt call-center employees of JPMorgan Chase & Co, N.A. who worked at any time from December 14, 2014 through the final disposition of this matter."

The Court orders Defendant to produce to Plaintiffs' counsel within 14 days, in computer-readable format, the contact information requested by Plaintiffs for each putative class member.

The Court approves Plaintiffs' proposed judicial notice and reminder notice. The Court orders that the notice be sent to all putative class members via First Class Mail and e-mail, and allows the hiring of a third-party claims administration company for use at Plaintiffs' discretion.

Putative class members may execute their consent forms electronically. Putative class members will have a sixty-day notice period to join the case.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 10th of December, 2018.

*[signature]*

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE
