# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON RIVENBARK and KAYLAH CASUCCIO, Individually and on behalf of all others similarly situated, | § § § § | |
| PLAINTIFFS, | § § | Civ. Action No. 4:17-cv-03786 |
| v. | § § | |
| JPMORGAN CHASE & CO., | § § | |
| DEFENDANT. | § § | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT AND FLSA COLLECTIVE ACTION

Plaintiffs Shannon Rivenbark and Kaylah Casuccio ("Plaintiffs") hereby move this Court to preliminarily certify the proposed Rule 23 Class identified herein for the purpose of settlement, approve the Joint Stipulation of Settlement Agreement and Release ("Agreement") between Plaintiffs and Defendant JPMorgan Chase Bank, N.A., improperly named as JPMorgan Chase & Co., ("Chase") (collectively, the "Parties"),, and set a fairness hearing to address the same. Plaintiffs further move this Court to preliminarily approve the Agreement as to the FLSA collective action. A copy of the Agreement is attached as Exhibit A.  Chase does not oppose this Motion.

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

Table of Authorities ....................................................................................................................... iv

I.   Introduction .......................................................................................................................... 1

II.  Issues Presented ................................................................................................................... 2

III. Summary of Facts and Procedural History .......................................................................... 3

IV.  Summary of the Settlement Terms ....................................................................................... 5

    A.  The Settlement Fund ....................................................................................................... 5

    B.  Individuals Included in the Proposed Rule 23 Class ....................................................... 5

    C.  Allocation Formula ......................................................................................................... 6

    D.  Release of Claims ........................................................................................................... 7

    E.  Attorneys' Fees and Litigation Costs ............................................................................. 8

    F.  Class Representatives and Service Awards ..................................................................... 9

    G.  Settlement Administration ............................................................................................... 9

V.   Argument and Authorities .................................................................................................. 10

    A.  The Class Action Settlement Procedure ....................................................................... 10

    B.  Applicable Standards .................................................................................................... 11

    C.  The Proposed Settlement Merits Preliminary Approval ............................................... 13

        1.  There Is No Reason to Doubt the Fairness of the Settlement ...................................... 13

        2.  There Are No Deficiencies in the Settlement ............................................................. 14

        3.  The Settlement Does Not Improperly Grant Preferential Treatment to Plaintiff or any Segment of the Class ..................................................................................... 14

        4.  The Settlement Does Not Excessively Compensate Class Counsel .............................. 15

        5.  The Settlement Is Within the Range of Reasonableness .............................................. 16

    D.  Class Certification for Settlement Only ........................................................................ 17

        1.  Settlement Class Defined ........................................................................................... 17

        2.  Rule 23 Requirements ............................................................................................... 17

            i.  Rule 23(a)(1)'s Numerosity Requirement is Met ...................................................... 18

            ii.  Rule 23(a)(2)'s Commonality Requirement is Met .................................................. 18

            iii.  Rule 23(a)(3)'s Typicality Requirement is Met ....................................................... 19

            iv.  Rule 23(a)(4)'s Requirement that the Class Representatives and Class Counsel Adequately Protect Class Interests Is Met ................................................... 20

            v.  Rule 23(b)(3)'s Requirement for Predominance and Superiority Are Met ............ 21

        3.  The Court Should Appoint Plaintiffs' Counsel as Class Counsel ................................. 23

        4.  The Court Should Approve the Parties' Proposed Notice and Distribution Plan

.................................................................................................................... 24

E.    Approval of FLSA Settlement Is Appropriate ........................................................ 25

    1.    A Bona Fide Dispute Exists Between the Parties .................................................. 26

    2.    The Settlement Agreement in This Case is Fair and Reasonable .................................. 26

        i.    The Absence of Fraud or Collusion in the Settlement Favors Approval .............. 27

        ii.    The Complexity, Expense, and Likely Duration of this Case, Were it Not to Settle, Favor Settlement ........................................................................ 27

        iii.    The Discovery Taken by the Parties Favors Approval of the Settlement ............. 28

        iv.    The Uncertainty of the Litigation Favors Settlement ................................. 28

        v.    The Available Range of Recovery and the Uncertainty of Damages Favor Settlement ........................................................................................ 29

        vi.    The Opinions of All Parties and Counsel Favor Settlement .......................... 29

VI.  Conclusion ................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................................... 17, 20, 23

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457 (S.D. Fla. 2002) ................................ 12

*Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...................... 14

*C.f., Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001) .............................................. 13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................... 12

*Cormier v. C & S Wireline Servs., L.L.C.*, No. 2:15-CV-209, 2015 WL 12803706 (S.D. Tex. July 15, 2015) ................................................................................................................................ 26

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................... 12, 27

*DeHoyos v. Allstate Corp*, 240 F.R.D. 269 (W.D. Tex. 2007) ........................................ 11, 13, 15

*DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 WL 821751 (S.D.N.Y. Jan 12, 2015) .......... 11

*Dyson v. Stuart Petro. Testers, Inc.*, No. 1:15-cv-282, 2016 WL 815355 (W.D. Tex. Feb. 29, 2016) ................................................................................................................................ 26

*East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395 (1977) ......................................... 20

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) ..................................................... 12

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ..................................... 20

*Gevaerts v. TD Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121 (S.D. Fla. Aug. 4, 2015) ................................................................................................................................ 12

*Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470 (5th Cir. 1982) ......................................... 20

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ..................................................... 12

*In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................ 17, 19, 25

*In re Katrina Canal Breaches Litig.*, 628 F.3d 186 (5th Cir. 2010) ..................................... 25

*In re OCA, Inc. Secs & Derivative Litig.*, Civ. A. No. 5-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ........................................................................................................................ 12, 13

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) .................................................. 11

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) ....................... 22

*James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001) ............................................. 19

*King v. United SA Fed. Credit Union*, 5:09-cv-00937-NSN (W.D. Tex. Oct. 8, 2010) ....................... 15

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) .......................................... 10, 13

*LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) ..................................... 26

*Marcus v. J.C. Penny Co., Inc.*, No. 6:13-cv-736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ............ 27

*Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443 (S.D. Tex. 1996) ..................................... 27

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ..................................................... 27

*Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007) ......................... 21

*Senne v. Kansas City Royals Baseball Corp.*, No. 17-16245, 2019 WL 3849564 (9th Cir. Aug. 16, 2019) ......................................................................................................................................... 22

*Tyson Foods, Inc. v. Bouaphakeo*, ___U.S. ___, ___, 136 S. Ct. 1036 (2016) ............................................. 21

*Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................................................. 18

*Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015) ........................ 16

*Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ............................................................................ 18

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030 (5th Cir. 1981) .......................................... 18

## Rules

FED. R. CIV. P. 23 ...................................................................................................................... passim

## Other Authorities

2 NEWBERG ON CLASS ACTIONS (5th ed. 2012) .................................................................. 21

4 NEWBERG ON CLASS ACTIONS (4th ed. 2002) .................................................................. 12

5 *James W.M. Moore, et al.*, MOORE'S FEDERAL PRACTICE (3d ed. 2000) ................................ 20

*Manual for Complex Litigation* § 21.132 (4th ed. 2004) ........................................................ 11, 12

NEWBERG ON CLASS ACTIONS (5th ed. 2012) .................................................................. 22

# I.
## INTRODUCTION

This is a proposed collective and class action lawsuit for unpaid overtime wages brought by Plaintiffs Shannon Rivenbark and Kaylah Casuccio, on behalf of themselves and all other similarly situated current and former hourly call-center employees of Chase, who claim they were not compensated for all of the hours they worked—specifically including time spent on preliminary pre-shift start-up activities. Plaintiffs have alleged claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19, to recover their unpaid overtime compensation and statutorily prescribed penalties. In addition to their claims under the FLSA, Plaintiffs have also alleged state-law claims (both statutory and common-law) for those current and former hourly call-center employees who worked in Texas and Ohio.[1] *See* ECF No. 13 (Plaintiffs' First Amended Collective/Class Action Complaint).

As explained more fully below, the Parties have negotiated an Agreement that will resolve the claims of the Named Plaintiffs, the Opt-In Plaintiffs, and the Putative Rule 23 Class Members.[2] By this Motion, the Parties are seeking certification, for settlement purposes only, of a settlement class pursuant to Federal Rule of Civil Procedure 23. Specifically, Plaintiffs seek preliminary approval of a settlement class resolving federal, state-law , local, and common law claims related to wage and hour matters, including, but not limited to, claims for unpaid straight time and overtime wages, failure to pay the minimum wage, failure to provide

---

[1] By the terms of the Agreement between the Parties, within five days of the filing date of this Motion, Plaintiffs will file a Second Amended Collective/Class Action Complaint, including additional Rule 23 state law claims.

[2] By this Motion, the Plaintiffs' seek approval of the pending Agreement (and class certification for settlement purposes).

accurate wage statements, wage theft, improper wage payments, failure to provide meal and rest breaks, improper wage deductions, and failure to maintain accurate records.[3]

By this Motion, Plaintiffs are also seeking conditional certification of a collective action pursuant to 29 U.S.C. § 216(b). The total amount that Chase will pay pursuant to the Agreement is $3,750,00.00, inclusive of attorneys' fees, costs, the reserve fund, and enhancement awards for the Named Plaintiffs and those Opt-In Plaintiffs who were deposed prior to mediation.[4] The Parties reached the Agreement after mediating this matter in New York, New York before Michael Dickstein, one of the preeminent wage and hour mediators in the United States. The Parties believe the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval under binding Fifth Circuit precedent.

## II.
### ISSUES PRESENTED

By this Unopposed Motion, the Plaintiffs ask the Court to: (1) certify the proposed settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process; (2) conditionally certify the collective action pursuant to 29 U.S.C. § 216(b) for settlement purposes; (3) appoint Austin Anderson and Clif Alexander of ANDERSON ALEXANDER, PLLC as Class Counsel for the Proposed Settlement Class for settlement purposes; (4) appoint Shannon Rivenbark and Kaylah Casuccio as Class Representatives for the Proposed Settlement Class; (5) approve the Parties' proposed Notice of Settlement, attached as Exhibit B; (6) set a date by which the Parties must file a motion for

---

[3] The specific state law claims subject to release include, but are not limited to, those identified in Exhibit 7 to the Agreement.

[4] The details of the Agreement are filed herewith as Exhibit A.

final settlement approval and petition for an award of attorneys' fees and costs; and, (7) schedule the Fairness Hearing.

## III.
## SUMMARY OF FACTS AND PROCEDURAL HISTORY

JPMorgan Chase Bank, N.A. ("Chase") in the last three years has operated call centers in the following states—Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Michigan, Missouri, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, and West Virginia.

On December 14, 2017, Plaintiff Shannon Rivenbark filed her Original Collective Action Complaint on behalf of herself and all other similarly situated hourly, non-exempt call-center employees who worked for Chase from December 14, 2014 through the present, alleging they were not paid for all hours worked, which led to an underpayment of their overtime compensation. *See* ECF No. 1. Specifically, among other things, Plaintiff Rivenbark contended that Chase did not pay for "start-up" time before their respective shifts started or otherwise did not pay for all time worked. Plaintiff Rivenbark subsequently amended her complaint, adding Plaintiff Casuccio as a named plaintiff, and added Ohio and Texas state law claims as proposed class actions pursuant to Federal Rule of Civil Procedure 23(b)(3). *See* ECF No. 13.

Chase denies any liability to Plaintiffs and the Putative Class Members for any back wages or overtime and asserts that its hourly, non-exempt call-center employees were fully compensated under federal and state law. To the extent there were any Plaintiffs or Putative Class Members who were not paid for all hours worked, which Chase does not concede, Chase

maintains that these underpayments were (a) de minimis or otherwise not compensable, (b) did not occur every week, (c) did not occur in weeks where Plaintiffs and the Putative Class Members worked fewer than 40 hours and (d) did not affect all Plaintiffs and Putative Class Members on a class-wide basis.

After engaging in significant conditional certification discovery, Plaintiffs filed their Motion for Conditional Certification and Notice to the Putative Class Members. *See* ECF No. 45. This Court granted Plaintiffs' Motion and authorized the issuance of notice to a nationwide class consisting of all hourly, non-exempt call-center employees who worked for Chase within the previous three years. *See* ECF No. 72. Chase subsequently challenged the order via a Petition for Writ of Mandamus before the Fifth Circuit Court of Appeals, wherein the Fifth Circuit ultimately remanded the opinion for further consideration in light of its statements regarding the ability of this Court to authorize the issuance of notice to individuals who were purportedly subject to arbitration agreements that included class/collective waivers—that is, a requirement that they must proceed individually rather than as part of a class or collective. *See* ECF No. 87.

After receiving this ruling from the Fifth Circuit, and recognizing that the ultimate conditional certification decision could still favor either party, the Parties agreed to stay the case to allow them to mediate. During mediation, the Parties reached an agreement fully resolving the claims between them and on behalf of those putative class members who had not agreed to arbitrate their claims—for both the FLSA collective action and the Rule 23 class action. By way of this Motion, the Plaintiffs seek preliminary approval of the Agreement, attached hereto as Exhibit A, and certification of the Rule 23 class and conditional certification of the collective action under 29 U.S.C. § 216(b), both for settlement purposes.

# IV.
## SUMMARY OF THE SETTLEMENT TERMS

## A. THE SETTLEMENT FUND

The Parties have agreed to settle this matter for the total gross settlement amount of $3,750,000.00. Included in that amount is Class Counsel's attorneys' fees and out-of-pocket expenses, settlement administration costs, a reserve fund of $100,000.00, and $20,000.00 in enhancement awards for the Named Plaintiffs and the Opt-In Plaintiffs who were deposed prior to mediation. Each member of the Rule 23 Settlement Class will receive his or her *pro rata* share of the net settlement fund (gross settlement sum less attorneys' fees, out-of-pocket expenses, settlement administration costs, the reserve fund, and enhancement awards) based on his or her Settlement Workweeks Percentages—a number unique to each class member calculated based on the number of weeks he or she worked during the Relevant Period. Importantly, approximately fifty-five percent (55%) of the gross settlement amount will be payable to the Rule 23 Class Members directly.[5]

## B. INDIVIDUALS INCLUDED IN THE PROPOSED RULE 23 CLASS

The Parties have agreed that the Rule 23 Settlement Class should be comprised of the following individuals: the approximately 6,880 current and former hourly, non-exempt call-center employees who worked for Chase at any time in the Relevant Period who: (i) have not otherwise released or extinguished their claims; (ii) have not agreed to arbitrate their claims; and (iii) do not timely submit a valid Opt-Out Request. ("Rule 23 Class Members") *See* Ex. A, ¶ 1.43.

---

[5] Any amounts not claimed through the Claim Notification Process will revert to Chase.

## C.    ALLOCATION FORMULA

The Settlement Administrator will calculate a "Settlement Workweeks Percentage" that will serve as the multiplier in determining how much of the net settlement amount is owed to each Rule 23 Class Member.  The calculation will be performed as follows:

(a)    **First**, the Administrative Costs, Reserve Fund, Class Counsel's requested attorneys' fees and costs, and Enhancement Awards will be deducted from the Maximum Settlement Amount to create the Net Settlement Amount;

(b)    **Second**, the Administrator will add each Class Member's Workweeks to determine the Total Workweeks applicable to the class;

(c)    **Third**, the Claims Administrator will divide each Class Member's Workweeks by the Total Workweeks, and this quotient shall be the Class Member's Settlement Workweeks Percentage;

(d)    **Fourth**, each Class Member will have the Net Settlement Amount multiplied by his or her individual Settlement Workweeks Percentage. The resulting amount will be the Class Member's Settlement Payment.

*See id.* at ¶ 3.8.1.

Moreover, the Settlement sets forth that fifty percent (50%) of all payments constitute wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount. Chase will be responsible for the employer portion of all such payroll taxes and withholdings. The Parties further agree that the remaining fifty percent (50%) constitutes payment for liquidated damages, prejudgment interest, and penalties, and will be reported on an IRS Form 1099. *See* Ex. A., ¶ 3.9.1.

**D**.    **RELEASE OF CLAIMS**

Each Rule 23 Class Member will receive a Notice of Settlement which will include a statement identifying the claims subject to the agreement and indicating that failing to opt-out of the settlement will release Chase from any and state or local law wage and hour claims, causes of action, or liabilities.[6] In the event a Rule 23 Class Member fails to return the Opt-Out Request, he or she will release the following state and local laws, as defined in the settlement agreement:

"Released State and Local Law Claims" means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendant Releasees, of whatever kind and nature, character, and description, whether known or unknown, and whether anticipated or unanticipated, arising under state and local law, whether in law or equity, whether sounding in tort, contract, statute, common law, or other applicable law or regulation including claims that the Settlement Class Member does not know of or suspect to exist in his/her favor, that accrued while the Settlement Class Member was employed as a Call Center Employee during the Relevant Period through the Preliminary Approval Date, for any type of relief, including without limitation, claims for wages, damages, premium pay, unpaid costs, expenses, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, or relating to pay, based on the following categories of allegations: (a) all claims under applicable state or local laws and regulations for the failure to timely pay any type of overtime compensation or other wages (including minimum wage, late payments of wages or business expenses); (b) all claims arising under any applicable state or local laws or regulations for the failure to provide or pay for meal periods and/or rest periods; (c) all claims under applicable state or local laws or regulations, including, but not limited to, alleged recordkeeping violations stemming from or based on alleged misclassification; (d) all claims arising under any applicable or local laws or regulations for the failure to furnish accurate, itemized wage statements or other notices; (e) all claims arising under any common law theory for failure to provide some or all wages due, including, but not limited to, claims brought under the theories of *quantum meruit* or unjust enrichment; and (f) all claims for penalties or additional damages arising from the claims described in (a) through (e) inclusive above under applicable state or local law.

---

[6] Plaintiffs and Opt-In Plaintiffs entitled to an enhancement award shall also execute a general release of their claims against Chase. The general release form is attached as Exhibits 3 and 4 to the Settlement Agreement.

The Released State and Local Claims are the claims meeting the above definition under any and all applicable state and local statutes, regulations or common law, including without limitation, those set forth in the compendium of state specific wage and hour laws attached hereto as Exhibit 7, as well as any state or local claims related to any claim for benefits arising from any Settlement Payment under this Settlement Agreement.

*See* Ex. A, ¶ 1.40.[7]

Those Rule 23 Class Members who return a Claim Form will become "Participating Claimants." *See id.* at ¶ 1.35. In addition to the above released claims, Participating Claimants will also release their claims under federal law, defined by the settlement agreement as follows:

"Released Federal Law Claims" means any and all law claims, obligations, demands, actions, rights, causes of action, and liabilities against Defendant Releasees, of whatever kind and nature, character, and description, whether known or unknown, and whether anticipated or unanticipated arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, et. seq., and any and all derivative and/or related federal claims, including, but not limited to, claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to keep accurate records, any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any and all claims under the Employee Retirement Income Security Act ("ERISA"), that accrued while the Participating Claimant was employed as a Call Center Employee during the Relevant Period through the Preliminary Approval Date, for any type of relief, including without limitation, claims for wages, penalties, liquidated damages, interest, attorneys' fees, litigation costs, or equitable relief. The Released Federal Law Claims include any federal claims for benefits arising from any Settlement Payment under this Settlement Agreement, including, but not limited to, ERISA.

*See id.* at ¶ 1.39.

E.    **ATTORNEYS' FEES AND LITIGATION COSTS**

Consistent with the fee agreement entered into between Plaintiffs and Plaintiffs' Counsel, Plaintiffs' Counsel respectfully request an award of attorneys' fees in the amount of

---

[7] The state specific wage and hour laws are also included in the introductory section to this Motion.

thirty-eight percent (38%) of the total settlement fund and for reimbursement of their actual out-of-pocket litigation costs from the settlement fund.[8] Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a motion for approval of their attorneys' fees and costs concurrently with the motion for final settlement approval.

## F.    CLASS REPRESENTATIVES AND SERVICE AWARDS

The Parties request that the Named Plaintiffs—Shannon Rivenbark and Kaylah Casuccio—be appointed as the Class Representatives for the Settlement Class. As part of the Agreement, the Parties have agreed to enhancement awards of $5,000.00 for each Class Representative, with additional enhancement awards of $2,000.00 each for the following Opt-In Plaintiffs who provided deposition testimony prior to mediation: Ineasha Day, Norman Eaton, Denise Gunnoe, Deborah Moore, and Carla Rigsby. In light of their efforts that resulted in a settlement on behalf of the Plaintiffs, Opt-In Plaintiffs, and Rule 23 Class Members, and the significant risk to their reputations, these modest awards are reasonable.

## G.    SETTLEMENT ADMINISTRATION

Chase has elected to retain KCC, LLC, a third-party settlement administrator ("Administrator") to administer the settlement. Under the terms of the Agreement, administration costs and expenses incurred by the Administrator are payable out of the gross settlement fund.[9] Within twenty-one (21) business days of the Court's Order granting this Motion, the Administrator will be responsible for formatting, printing, and mailing the Notice

---

[8] The fee agreement between Plaintiffs and their counsel authorizes Plaintiffs' Counsel to retain 40% of the settlement plus litigation expenses. Here, Plaintiffs' Counsel have voluntarily reduced their fees by two percent, and seek 38% of the total settlement amount.

[9] KCC, LLC has provided a quote and anticipates that the full cost of the settlement administration will not exceed $60,000.00.

Packet to each Rule 23 Class Member. The Administrator will maintain staffed call center services to answer any questions that the Rule 23 Class Members may have about the settlement itself, and will be responsible for communicating with Plaintiffs' Counsel and Chase's Counsel should questions arise that are beyond the scope of their responsibilities. The Administrator will also be responsible for receiving the completed Claim Forms and Opt-Out Requests and providing those to the Parties' counsel.

Following the Court's issuance of an order granting final approval of the settlement and dismissing the case, the Administrator will be responsible for: (1) issuing Settlement Payments to participating Plaintiffs and Class Members; (2) calculating and remitting all required payroll taxes to the IRS and state government entities: (3) calculating, issuing and mailing IRS Form W-2s and IRS Form 1099s to the participating Plaintiffs and Class Members; (4) after settlement checks are mailed, providing Plaintiffs' Counsel and Chase's Counsel with the names of any individuals who have not negotiated their settlement checks prior to the void date. Plaintiffs' Counsel and Chase's Counsel will work with the Administrator to take all necessary steps to ensure that the Notice of Settlement and settlement checks are sent to the correct addresses.

## V.
### ARGUMENT AND AUTHORITIES

### A.    THE CLASS ACTION SETTLEMENT PROCEDURE

Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a two-step process. First, the court conducts a preliminary review to determine whether the proposed settlement is "within the range" of possible approval, *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 662 (N.D. Tex. 2010) (preliminarily

approving settlement), or in other words, whether there is probable (?) cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness. *See DeLeon v. Wells Fargo Bank, N.A.*, No. 12-cv-4494, 2015 WL 821751, at *1 (S.D.N.Y. Jan 12, 2015) (quoting *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980)). This step typically includes a conditional certification of the class for settlement purposes and approval of the form of notice to be sent to the class. *Manual for Complex Litigation* § 21.132 (4th ed. 2004) ("When a case settles as a class action before certification, the parties must present the court a plan for notifying the class and, if Rule 23(b)(3) applies, providing an opportunity to opt out, along with the motions for certification and preliminary approval of the settlement.").

If the court grants preliminary approval and notice is sent to the class, then in the second step of the settlement approval process the court conducts a final "fairness hearing" at which all interested parties are afforded an opportunity to be heard on the proposed settlement. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is "fair, reasonable, and adequate." *See DeHoyos v. Allstate Corp*, 240 F.R.D. 269, 287 (W.D. Tex. 2007); FED. R. CIV. P. 23(e)(2).

By this Motion, the Plaintiffs seek to accomplish the first step—that is, conditional certification for settlement purposes, approval of the plan to provide notice to the individual class members, and preliminary approval of the terms of the settlement. As part of this first step, the Plaintiffs will also request appointment of the class representatives, appointment of class counsel, and a certain time and date for the fairness hearing so that it can be inserted into the notice to the class members.

## B.    APPLICABLE STANDARDS

The Fifth Circuit has recognized that there is an "overriding public interest in favor of

settlement" that applies "particularly in class action suits." *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014); *see also Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) *on reh'g*, 670 F.2d 71 (6th Cir. 1992) . "The legitimacy of class settlements is reflected not only in Rule 23(e) but also in the special regime that Congress has created to govern class settlements under 28 U.S.C. §§ 1711–15." *See Deepwater*, 739 F.3d at 807. "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015) (citing *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002)); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the individual claims, would be impracticable. The Agreement, therefore, is the best vehicle for these employees to receive the relief to which they are entitled in a prompt and efficient manner.

For preliminary approval, "the standards are not as stringent as those applied to a motion for final approval. *See In re OCA, Inc. Secs & Derivative Litig.*, Civ. A. No. 5-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008); *see also Manual for Complex Litigation*, § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final review.").

On a motion for preliminary approval, courts consider the following factors: whether the settlement (1) discloses any reason to doubt its fairness, (2) has any obvious deficiencies, (3) proposes to grant preferential treatment to class representatives or segments of the class, (4) proposes excessive compensation to attorneys, and (5) appears to fall within the range of possible approval. *See OCA, Inc.*, 2008 WL 4681369, at *11.

Courts often note that a proposed settlement reached through arms-length negotiations is entitled to a judicial presumption of fairness. *See DeHoyos*, 240 F.R.D. at 287 ("[T]here is a strong presumption in favor of finding the settlement fair, adequate and reasonable.") (collecting cases); *see also Klein*, 705 F. Supp. 2d at 650 ("[C]ourts are to adhere to a strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval.").

## C.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### 1.     THERE IS NO REASON TO DOUBT THE FAIRNESS OF THE SETTLEMENT

Plaintiffs' Counsel—experienced wage and hour litigators accustomed to resolving claims on both collective and class action bases across the United States—are convinced that this settlement is fair and reasonable, both standing on its own and when viewed against other wage and hour settlements. *See* Declaration of Clif Alexander, attached as Exhibit C. The settlement negotiations were conducted fairly and at arm's-length with the assistance of Michael Dickstein, a nationally-renowned wage and hour mediator, and only after the exchange and rigorous analysis of ample payroll data. *C.f., Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (recognizing that arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement); *Bert v. AK Steel Corp.*,

No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Both Parties' counsel support the Agreement as fair and reasonable, and all certify that it was reached at arm's length.

## 2. THERE ARE NO DEFICIENCIES IN THE SETTLEMENT

The Parties have negotiated a reasonable settlement and a program to provide notice of the settlement to the class members that complies with Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure. The Rule 23 Class Members will receive the settlement notice in a hard copy via regular mail. Included with the six-page notice will be a one-page response form wherein they can elect to either return their claim form to participate in the settlement distribution, or to return their out-out request, to exclude themselves from the class.

The settlement provides ample time and reasonable procedures for class members to exclude themselves from the settlement or to object to the settlement if they choose to do so. Specifically, the deadline for the Rule 23 Class Members to return their claim forms, or requests to opt-out, is forty (40) days from the date the Administrator mails the notice.[10]

In short, this is an arms-length settlement achieved at mediation and by attorneys who are, on both sides, experienced in collective and class action litigation. The settlement terms and the process for approval are designed to avoid "obvious deficiencies" and the Plaintiffs respectfully submit that there are no deficiencies in this settlement.

## 3. THE SETTLEMENT DOES NOT IMPROPERLY GRANT PREFERENTIAL TREATMENT TO PLAINTIFFS OR ANY SEGMENT OF THE CLASS

---

[10] For those individuals whose claim forms are returned, their deadline is the later of (a) twenty days after the notice was re-mailed, or (b) forty days from the date the Administrator mailed the initial claim form. *See* Ex. A., ¶ 1.3.

The settlement does not improperly grant preferential treatment to the Plaintiffs or any segment of the class. Plaintiffs will be entitled to their *pro rata* share of the fund, as will all other class members. There are no "segments" of the class to be concerned with, nor any sub-classes. Separate from their claims, Plaintiffs, through their counsel, will request a small enhancement award for their assistance in the prosecution of this case. Additionally, the Parties have agreed to provide small enhancement awards to the five Opt-In Plaintiffs who provided deposition testimony in this matter. These awards will come, if at all, only by motion to this Court after notice to the other class members is provided, as contemplated by the Agreement.

Federal courts consistently approve service/enhancement awards in class/collective action lawsuits to compensate the named plaintiffs (and opt-in plaintiffs) for the services that they provide and the burdens that they shoulder during litigation. *See, e.g., DeHoyos*, 240 F.R.D. at 340 (collecting cases). The total sum of the enhancement awards requested herein does not exceed $20,000.00 to be paid from the settlement fund. This modest request compares favorably to other service awards in the Fifth Circuit. *See, e.g., King v. United SA Fed. Credit Union*, 5:09-cv-00937-NSN, ECF No. 31 (W.D. Tex. Oct. 8, 2010) (awarding $15,000 to each of the two class representatives).

### 4. THE SETTLEMENT DOES NOT EXCESSIVELY COMPENSATE CLASS COUNSEL

The reasonableness of attorneys' fees will be decided by this Court after Class Counsel files a separate motion for attorneys' fees and expenses. Class Counsel anticipates that they will request approximately forty percent (40%) of the common fund as compensation for

their fees and litigation expenses.[11] It is not unusual for courts in the Fifth Circuit to award percentages of approximately 40% of the common fund. *See Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393, *3 (S.D. Tex. Dec. 7, 2015) (awarding 40% ).

**5.      THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS**

The settlement is well within the range of reasonableness. The Parties agree that the estimated cash award to those filing claims will constitute an extraordinary settlement given their claims against Chase. First, it is a common fund settlement that allows class members to receive cash for a valid claim. Class Counsel expects that the net settlement fund will result in an average payment of approximately $300.00, with some Rule 23 Class Members receiving as much as approximately $555.00[12]

Moreover, the settlement represents a good value given the risks of continued litigation. If the litigation were to continue, Plaintiffs and the Rule 23 Class Members would face significant risk that could limit—or eliminate—their claims, including the denial of Rule 23 class certification, and dispositive motions on liability, liquidated damages, and willfulness. Despite these real and significant risks, the Rule 23 Class Members will receive meaningful compensation based on the length of time they worked for Chase during the relevant period.

Weighing the risks against the benefits of a settlement, the Agreement is fair and reasonable.

---

[11] Class Counsel is seeking 38% of the common fund in fees, and approximately 2% of the common fund in expenses, for a total of approximately 40% of the common fund.

[12] These numbers are estimates based off of exclusions to the gross settlement fund of the requested amount of attorneys' fees, expenses, enhancement awards, quoted administrative costs, and the reversionary fund. These numbers are estimates based off of exclusions to the gross settlement fund of the requested amount of attorneys' fees, expenses, enhancement awards, quoted administrative costs, and the reversionary fund.

**D.     CLASS CERTIFICATION FOR SETTLEMENT ONLY**

**1.     SETTLEMENT CLASS DEFINED**

For purposes of the proposed settlement only, the Parties seek certification of a class of individuals defined as follows:

> All persons employed by Defendant JPMorgan Chase Bank, N.A. ("Chase"), as a Call Center Employee at any time from December 14, 2014 through the date an order issues preliminarily approving the settlement and who: (i) have not otherwise released or extinguished their claims; (ii) have not agreed to arbitrate their claims; and (iii) do not timely submit a valid Opt-Out Request.

In total, there are approximately 6,880 individuals included the above defined class.

**2.     RULE 23 REQUIREMENTS**

Plaintiffs seek class certification under Rule 23(b)(3) and the certification requirements of Rule 23 generally apply even when certification is for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* FED. R. CIV. P. 23(b)(3). The one exception is that, because no trial is contemplated the court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620; *accord In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1058–60 (S.D. Tex. 2012). The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence. *Id.* at 1052.

To be certified, the class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4)     the representative parties will fairly and adequately protect the interests of the class.

*See* FED. R. CIV. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3).

### i.     Rule 23(a)(1)'s Numerosity Requirement is Met

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a). Importantly, the plaintiff is not required to establish that it is *impossible* to join all members of the proposed class, but simply that joinder would be difficult and inconvenient. *Cole v. Livingston*, No. 4:14-CV-1698, 2016 WL 3258345, at *6 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017) ("The proposed General Class contains over 1,400 members . . . so joinder of all the proposed class members would be impracticable if not impossible.") . In this case, there are over six thousand class members and the numerosity requirement is clearly satisfied. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting that courts have certified classes with as few as twenty-five or thirty members); *Cole*, 2016 WL 3258345, at *6.

### ii.    Rule 23(a)(2)'s Commonality Requirement is Met

Commonality under Rule 23(a)(2) is satisfied with the legal question linking the class members is substantially related to the resolution of the litigation. *Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

> "Their claims must depend on a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Id.* Commonality "is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members. *See Heartland*, 851 F. Supp. 2d at 1053.

Here, the Plaintiffs believe the commonality requirement is satisfied herein, because Class Members were subjected to the same company-wide policy that Plaintiffs alleged caused them to engage in compensable services while working off the clock, and without pay. As such, the success or failure of each Class Member's claim turns on the same common questions pertinent to the application of Chase's policies to the Rule 23 Class—that is, that it required the Class Members to perform compensable services while off of the clock, in violation of the FLSA and other various state, local, and common law wage and hour laws, and if so, whether Chase's violation of the FLSA was willful, or in good faith.

### iii.    Rule 23(a)(3)'s Typicality Requirement Is Met

Rule 23(a)(3) requires that "the claims . . . of the representative parties be typical of the claims . . . of the class." FED. R. CIV. P. 23(a)(3). "[T]he test for typicality is not demanding." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) Instead, the typicality inquiry focuses on the "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *See id.* (citations omitted). "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.* (quoting 5 *James W.M. Moore, et al.*, MOORE'S

FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

Here, the Plaintiffs maintain that typicality exists because Plaintiffs and the Class Members share the same legal interest in recovering their unpaid wages based on the same legal theory—that Chase's failure to compensate Plaintiffs and Class Members for all compensable time worked (including time spent starting up and logging into Chase's computer system) was in violation of the FLSA and various state, local, and common law wage and hour laws.

    iv.    <u>Rule 23(a)(4)'s Requirement that the Class Representatives and Class Counsel Adequately Protect Class Interests Is Met</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13 (1982)). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Likewise, the adequacy requirement applies equally to class counsel. *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) (recognizing that the adequacy requirement mandates an inquiry into the zeal and competence of the representative's counsel).

Here, the Plaintiffs maintain that both aspects of Rule 23(a)(4)'s adequacy requirement are satisfied. The proposed class representatives are members of the class they seek to represent and do not have interests that are antagonistic to the other Class Members. *See Amchem*, 521 U.S. at 626. Rather, all share a common interest in recovering their unpaid wages.

Likewise, as discussed in the Declaration of Clif Alexander, Plaintiffs' counsel is qualified, experienced in the litigation of mass and class actions, and fully able to conduct this litigation on behalf of the proposed classes. Moreover, Plaintiffs' Counsel have vigorously prosecuted this case and understand their fiduciary responsibilities to the class.

     v.    <u>Rule 23(b)(3)'s Requirements for Predominance and Superiority Are Met</u>

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, ___U.S. ___, ___, 136 S. Ct. 1036, 1045 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012)). Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007) In this case, Plaintiffs submit that the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all Class Members share a common set of core, predominate facts and legal issues, including:

- All Class Members worked for Chase as call-center employees;

- All Class Members were non-exempt employees;

- All Class Members were paid by the hour;

- All Class Members were required to start-up and log-in to multiple computer systems; and

- All Class Members were subject to the same Employee Handbook;

Other federal courts have found the predominance factor to be fulfilled in similar cases brought on behalf of non-exempt employees for their off-the-clock claims. *See Senne v. Kansas*

*City Royals Baseball Corp.*, No. 17-16245, 2019 WL 3849564, at *15–16 (9th Cir. Aug. 16, 2019) ("A proposed (b)(3) class may be certified as long as 'one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.") (internal quotations omitted).

"[P]redominance in employment cases is rarely defeated on the grounds of differences among employees so long as liability arises from a common practice or policy of an employer." *Senne*, 2019 WL 3849564, at *15–167 (quoting NEWBERG ON CLASS ACTIONS § 23:33 (5th ed. 2012)). While overarching corporate policies and practices "are not a guarantee that predominance will be satisfied, such policies 'often bear heavily on questions of predominance and superiority.'" *See id.* (quoting I*n re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009)). Here, the claim subject to resolution through the Rule 23 Class Action Settlement pertains to whether Plaintiffs and the Class Members' preliminary start-up time, *inter alia*, was unpaid in violation of state wage and hour laws. Because the only legal issue to be resolved pertains equally to each Class Member, the predominance requirement is satisfied. *See id.*

The superiority requirement of Rule 23(b)(3) requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the dispute. FED. R. CIV. P. 23(b)(3). Four factors are necessary for courts to consider in addressing the superiority factor: (1) the interests of the members of the class in individually controlling he prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class

action. *See id.* Each factor weighs in favor of certification.

Addressing the first and second factors together, there is no evidence that the Class Members have any interest in maintaining this litigation in separate actions, and there is no other litigation pending alleging the same claims against Chase. Additionally, addressing the third factor, the benefits of concentrating the claims in this Court through the class-action mechanism are evident because Chase has consented to this Court's jurisdiction and it allows for the resolution of claims across twenty-six states. Finally, the manageability factor is automatically satisfied when a case is being certified for settlement purposes. *See Amchem Prods.*, 521 U.S. 591.

Based on the above, the proposed settlement classes satisfy the requirements of Rule 23 and should be certified for settlement purposes.

### 3. THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL

A court certifying a class generally must appoint class counsel. *See* FED. R. CIV. P. 23(g)(1)(A). The Rule lists several factors for the courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. *See id.* In addition, the court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Here, Plaintiffs request that ANDERSON ALEXANDER, PLLC be appointed as Class Counsel. As previously explained, this firm has diligently litigated this action from filing to

appeal to mediation and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-party mediator. Moreover, as explained in Clif Alexander's declaration, ANDERSON ALEXANDER, PLLC has substantial credentials in class and collective action litigation in the wage and hour context. *See* Exhibit C.

4. **THE COURT SHOULD APPROVE THE PARTIES' PROPOSED NOTICE AND DISTRIBUTION PLAN**

The content of the proposed Notice of Class Action Settlement, which is attached hereto as Exhibit B, fully complies with due process and Rule 23. *See* FED. R. CIV. P. 23(c)(2)(B). Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.* The Notice proposed here satisfies each of these requirements. It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Importantly, it also provides instructions for opting out of the class, for filing their claim form, and for lodging objections to the proposed settlement. It also advises them that they have the right to retain their own counsel at the fairness hearing. Accordingly, the detailed information in the proposed Notice is more than adequate to put Class Members on notice of the proposed settlement and is within the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). In short, the proposed notice satisfies due process by "provid[ing] class members with the

information reasonably necessary for them to make a decision whether to object to the settlement." *In re Heartland*, 851 F. Supp. 2d at 1060 (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 186, 197 (5th Cir. 2010)).

According to the Parties' Notice Plain, within twenty-one (21) days after entry of a Preliminary Approval Order, the Administrator shall mail and email the attached notice to the class. The class members shall have forty (40) days to return the claim and/or opt-out request forms to the settlement administrator. The proposed notice plan is summarized below:

- **Within fifteen (15) business days of the Court's Preliminary Approval Order**:
  Defendant will provide the relevant class contact information to the Administrator in a format acceptable to the Administrator.

- **Within twenty-one (21) business days of receiving the information from the Parties**:
  The Administrator will mail, via First Class United States mail, the Court-approved notice packet to each Plaintiff and Class Member. The notice period will close forty (40) days from the date of the mailing.

- **At least** seven **(7) days prior to the Fairness Hearing, and at least thirty (30) days after the Claim Form Deadline**:
  Plaintiff shall move the Court for entry of the Order Granting Final Approval along with the associated entry of Judgment by filing a Motion for Judgment and Final Approval. The date of the Fairness Hearing will be set by the Court.

- **Within twenty-one (21) calendar days of (1) entry of the Court's Order granting final settlement approval; (2) issuance of an order directing the dismissal of the case and the entry of judgment; and (3) the expiration of the appeal rights of any party (the "effective date"):**
  The Administrator shall mail to each participating claimant, at his or her last known address, his or her individual settlement payment.

## E.    Approval of FLSA Settlement Is Appropriate

Because Plaintiffs' FLSA claims are distinct from the Rule 23 Class Members' state law claims, Plaintiffs seek approval of the settlement of their FLSA claims separately. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because

an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 216(b)"). Courts approve FLSA settlements when (1) they are reached as a result of contested litigation to resolve *bona fide* disputes, and (2) the settlement is fair and reasonable. *See Cormier v. C & S Wireline Servs., L.L.C.*, No. 2:15-CV-209, 2015 WL 12803706, at *1 (S.D. Tex. July 15, 2015).

## 1. A BONA FIDE DISPUTE EXISTS BETWEEN THE PARTIES

As discussed at length above, Plaintiffs alleged that Chase violated the FLSA because it failed to pay them the proper amount of overtime compensation. While Plaintiffs believe that they would have prevailed on the merits of their liability claim, success was not a certainty and a legitimate dispute existed on the amount of damages, if any. Chase at all times denied liability, asserted multiple defenses to Plaintiffs' claims, and challenged the alleged "off-the-clock" hours worked. Accordingly, there is a *bona fide* dispute between the Parties that is fully resolved by the proposed Settlement Agreement.

## 2. THE SETTLEMENT AGREEMENT IN THIS CASE IS FAIR AND REASONABLE

The Court presiding over an FLSA action may approve a proposed settlement of the action under Section 216(b) after scrutinizing the settlement for fairness. *See Dyson v. Stuart Petro. Testers, Inc.*, No. 1:15-cv-282, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016) ("[T]he Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages."). In the Fifth Circuit, district courts are instructed to consider six factors when evaluating the proposed settlement agreement for class actions:

> (1) Whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the state of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Id.* (quoting *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)). "Significant weight is given to the opinion of class counsel concerning whether the settlement is in the best interests of the class and the court is not to substitute its own judgement for that of counsel." *Marcus v. J.C. Penny Co., Inc.*, No. 6:13-cv-736, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Here, the six-factor standard supports approval of the settlement agreement.

i.        The Absence of Fraud or Collusion in the Settlement Favors Approval

An initial presumption exists that a settlement is fair where counsel for the parties negotiate the settlement at arm's length. *Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996). Settlement of this litigation was achieved through formal mediation with experienced wage and hour mediator, Michael Dickstein. The Parties took appropriate steps in negotiating the comprehensive settlement agreement. As such, there is no indicia of fraud or collusion.

ii.        The Complexity, Expense, and Likely Duration of this Case, Were it Not to Settle, Favor Settlement

The complexity, expense, and duration of this case (were it not to settle at this time) are significant factors that all favor settlement. If the Parties had not been able to resolve the claims at issue through compromise, this litigation would continue because the Parties disagree about the merits of Plaintiffs' claims and the amount of damages, if any. Thus, the Parties

would incur substantial uncertainty in addition to further legal fees and expenses if this case is not settled. Given the complexities of the claims at issue and the expense and extended duration of continuing litigation, settlement is in the interests of Plaintiffs, Defendant, and judicial economy.

          iii.        <u>The Discovery Taken by the Parties Favors Approval of the Settlement</u>

The Parties undertook independent factual investigation of Plaintiffs' claims and analyzed the legal issues at hand. In addition to exchanging initial disclosures and responding to requests for production and interrogatories pursuant to the Federal Rules of Civil Procedure, Chase deposed five (5) Plaintiffs and Plaintiffs deposed one of Chase's supervisors. The depositions showed that there are bona fide disputes related to the amount of off-the-clock work (if any) performed by Plaintiffs and whether or not there was an unwritten policy at Chase that required its employees to work off of the clock. Accordingly, the discovery taken by the Parties favors approval of the settlement because it highlights that there remain contested questions of fact on the issues of liability and damages.

          iv.        <u>The Uncertainty of this Litigation Favors Settlement</u>

The Parties are well aware of the uncertainty associated with litigation. While Plaintiffs are confident in their claims, they also understand that the claims in this case may prove to be unsuccessful. Moreover, Plaintiffs recognize that Chase may appeal any judgment entered against them, further prolonging resolution of this matter. Accordingly, Plaintiffs strongly prefer the certainty of the Agreement, payable after court approval according to the settlement documents, to the risks and costs associated with continued litigation. Likewise, Chase understands the risk of litigating the claims at issue and prefers the certainty of the proposed settlement to the risks and costs associated with continued litigation.

v.    The Available Range of Recovery and the Uncertainty of Damages Favor Settlement

Plaintiffs contend, among other things, that they were owed an average of approximately $10.00 a week in unpaid overtime compensation. The Agreement provides for a recovery of approximately $2.17 per week for each Opt-in Plaintiff.[13] As such, the settlement amount is well within the range of recovery. Moreover, the risk that Chase would prevail on its defenses favors settlement. Although Chase may ultimately prevail, settlement is equally in its best interest because the costs of proceeding through trial on the merits are excessive considering the amount of damages at issue. Further, should Plaintiffs prevail on their claims, Chase would be liable not only for their own costs through trial, but also for the fees and costs of Plaintiffs' counsel. Accordingly, the Parties agree that this settlement is in their best interest.

vi.    The Opinions of Class Counsel Favor Settlement

The lawyers of Anderson Alexander, PLLC have litigated approximately 300 individual, collective, and class action wage and hour cases of all types and have recovered millions of dollars in these cases on behalf of workers across the United States. *See* Exhibit C. Based on this experience, Plaintiffs' counsel can confidently report to the Court that this prong is met. After intense settlement negotiations, an arms-length settlement was reached that, in the view of Plaintiffs' counsel, affords the Plaintiffs with significant and meaningful financial benefits and provides a certainty for payment. Further, Chase, upon the advice of its counsel, agrees that this settlement is in its best interest and seeks approval of the Agreement.

The Parties have accordingly shown that the Agreement at issue constitutes a

---

[13] The total settlement amount includes any unpaid back wages and unpaid overtime compensation allegedly due to Plaintiffs.

resolution of a *bona fide* dispute and reaches a fair and reasonable resolution of the claims at issue in this lawsuit.

## VI.
### CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter the Proposed Order submitted herewith and:

(1) certify the proposed settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in connection with the settlement process;

(2) conditionally certify the collective action pursuant to 29 U.S.C. § 216(b) for settlement purposes only;

(3) for settlement purposes, appoint Austin Anderson and Clif Alexander of ANDERSON ALEXANDER, PLLC as Class Counsel for the Proposed Settlement Class;

(4) appoint Shannon Rivenbark and Kaylah Casuccio as Class Representatives for the Proposed Settlement Class;

(5) approve the Parties' proposed notice of settlement, attached as Exhibit B and proposed notice procedure;

(6) set a date by which the Parties must file a motion for final settlement approval and petition for an award of attorneys' fees and costs;

(7) schedule the Fairness Hearing; and

(8) approve the settlement agreement pursuant to 29 U.S.C. § 216(b).

Date: November 13, 2019

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:     /s/ Clif Alexander
        **Clif Alexander**
        Federal I.D. No. 1138436
        Texas Bar No. 24064805
        clif@a2xlaw.com
        **Austin W. Anderson**
        Federal I.D. No. 777114
        Texas Bar No. 24045189
        austin@a2xlaw.com
        **Lauren E. Braddy**
        Federal I.D. No. 1122168
        Texas Bar No. 24071993
        lauren@a2xlaw.com
        **Alan Clifton Gordon**
        Federal I.D. No. 19259
        Texas Bar No. 00793838
        cgordon@a2xlaw.com
        **Carter T. Hastings**
        Federal I.D. No. 3101064
        Texas Bar No. 24101879
        carter@a2xlaw.com
        819 N. Upper Broadway
        Corpus Christi, Texas 78401
        Telephone: (361) 452-1279
        Facsimile: (361) 452-1284

        *Attorneys for Plaintiffs and the Putative Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander