UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON RIVENBARK and KAYLAH CASUCCIO, Individually and on behalf of all others similarly situated | § § § § | Civil Action No. 4:17-cv-03786 |
| | § | JURY TRIAL DEMANDED |
| *Plaintiffs,* | § § | |
| | § | COLLECTIVE ACTION |
| v. | § | PURSUANT TO 29 U.S.C. § 216(b) |
| | § | |
| JPMORGAN CHASE & CO. | § | CLASS ACTION PURSUANT TO |
| | § | FED. R. CIV. P. 23(b) |
| *Defendant.* | § | |

---

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT

---

TO THE HONORABLE KEITH P. ELLISON

Plaintiffs Shannon Rivenbark and Kaylah Casuccio ("Plaintiffs") hereby move this Court to certify the proposed Rule 23 Class identified herein for the purpose of settlement, determine that the Joint Stipulation of Settlement Agreement and Release ("Agreement") between the Plaintiffs and and Defendant JPMorgan Chase Bank, N.A., improperly named as JPMorgan Chase & Co., ("Chase") (collectively, the "Parties"), is fair and reasonable, and approve Agreement the between the Parties. Chase does not oppose this Motion.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

I.  Introduction ...........................................................................................................1

II. Litigation History ...................................................................................................2

III. Summary of Settlement Terms...............................................................................4

IV. Class Response to Notice of Settlement.................................................................5

V.  Legal Analysis Supporting Final Approval............................................................8

   A.  The Settlement is Fair, Reasonable and Adequate ........................................9

      1.  Whether the Settlement Was a Product of Fraud or Collusion.............9

      2.  The Complexity, Expense, and Likely Duration of the Litigation ......10

      3.  The Stage of the Proceeding and the Amount of Discovery Completed ..........11

      4.  The Probability of Success on the Merits.............................................12

      5.  The Range of Possible Recovery .........................................................13

      6.  The Opinions of Class Counsel, Class Representatives, and Absent Class Members Favor Settlement ...................................................14

   B.  The Required Service Awards are Reasonable .............................................15

   C.  Class Certification is Appropriate ................................................................16

   D.  Class Administration Costs are Reasonable .................................................16

   E.  Settlement of Class Action Claims is Favored .............................................17

VI. Conclusion...........................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Ayers v. Thompson*, 358 F.3d 356, (5th Cir. 2004) ........................................................ 12

*Brannum v. Collier*, 745 F. App'x 544 (5th Cir. 2018) ................................................... 7

*Bronson v. Board of Educ.*, 604 F. Supp. 68 (S.D. Ohio 1984) ..................................... 13

*China Agritech, Inc. v. Resh*, ___ U.S. ___, ___, 138 S.Ct. 1800, 1811 (2018) ........................................................................................................................ 17

*City of Detroit v. Grinnell*, 495 F.2d 448 (2d Cir. 1974) .............................................. 10

*Cole v. Collier*, No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018) ........................................................................... 7, 8, 9, 10, 11, 13, 14, 16, 19, 20

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) .......................................................... 15

*Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979) .......................................................... 20

*Dillow v. Home Care Network Inc.,* No. CV-612, 2018 WL 4776977 (S.D. Ohio Oct. 3, 2018) .................................................................................................. 17

*Dilworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) ................................................................................ 17

*Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472 (W.D. Tex. May 23, 2016) ......................................................................... 18

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) .............................. 10

*In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................................................................... 12

*In re Broadwing, Inc. ERISA Litig.*, 252 F. R.D. ......................................................... 20

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) ............................ 6, 7

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) *rev'd*, 24 F. App'x 520 (6th Cir. 2001) .......................................................................... 17

*King v. United SA Fed. Credit Union*, 5:09-cv-00937-NSN (W.D. Tex. Oct. 8, 2010) ................................................................................................................... 18

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................... 11

*Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496 (E.D. Mich. 2000) ......................... 13

*Lewallen v. Scott Cty., Tenn.*, 724 F. Supp. 2d 893 (E.D. Tenn. 2010) ......................... 14

*Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) ........................................................................12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...........................10

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ........................20

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ................................................... 10, 14

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ..................................... 10, 16

*Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ........................................................................................12

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944) ....................................................................................................................14

*UAW, et al. v. General Motors Corp.*, 497 F. 3d 615 (6th Cir. 2007) .............................19

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................... 7, 11

# I.
# INTRODUCTION

On November 13, 2019, Plaintiffs, Shannon Rivenbark and Kaylah Casuccio ("Plaintiffs") moved this Court for an Order certifying, for settlement purposes only, a settlement class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). On February 4, 2020, this Court granted the motion for preliminary approval (ECF No. 102), as follows:

1.      Finding the class and collective action settlement agreement fell within the range of reasonableness and preliminarily approving the same;

2.      Conditionally certifying, for settlement purposes only, the following Class and Collective:

> **Class Definition**: all persons employed by Defendant as a Call Center Employee at any time from December 14, 2014 through the date this Order is granted and who: (i) have not otherwise released or extinguished their claims; and (ii) do not timely submit a valid Opt-Out Request.

> **FLSA Collective Definition**: all persons employed by Defendant as a Call Center Employee at any time from December 14, 2014 through the date this Order is granted and who have not otherwise released or extinguished their claims.

3.      Finding that, for settlement purposes only, the requirements of 29 U.S.C. § 216, Federal Rule of Civil Procedure 23(a), and Federal Rule of Civil Procedure 23(b)(3) are satisfied, with the exception of the manageability requirement of Rule 23(b)(3).

4.      Appointing, for settlement purposes only, Shannon Rivenbark and Kaylah Casuccio as Class Representatives.

5.      Appointing, for settlement purposes only, ANDERSON ALEXANDER, PLLC as Class Counsel.

6.      Appointing KCC, LLC as Settlement Administrator.

7.	Approving, as to form and content, the Notice of Proposed Class and Collective Action Settlement, the Claim Form, and the Cure Letter, attached to the Agreement and ordering the Settlement Administrator to mail those documents to the members of the Classes as provided in the Agreement and approving the schedule proposed by the Parties in the Preliminary Motion for Approval.

The Court scheduled the Final Approval Hearing to take place on April 22, 2020, at 2:30 p.m., to confirm the overall fairness of the settlement and to fix the amount of reasonable attorneys' fees and costs to Class Counsel and enhancement payments to the Class Representatives.

The Class Representatives now request that, pursuant to the schedule set by the Court in its February 4, 2020 Order preliminarily approving settlement and in light of the facts and legal arguments articulated in this Motion, that the Court issue an Order finally certifying the requested settlement class and approving the Settlement.

## II.
## LITIGATION HISTORY

On December 14, 2017, Shannon Rivenbark filed this lawsuit against JPMorgan Chase Bank, N.A., improperly named as J.P. Morgan Chase & Co., ("JPMC") in the United States District Court for the Southern District of Texas, Houston Division. *See* ECF No. 1. Through the First Amended Complaint filed on February 16, 2018, Shannon Rivenbark and Kaylah Casuccio brought a proposed class and collective action under the FLSA, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the Ohio Prompt Pay Act ("OPPA") (together with the OMFWSA, the "Ohio Acts"), and the Texas common law. *See* ECF No. 13.

On May 18, 2018, Plaintiffs filed their Motion for Conditional Certification and Notice to the Putative Class Members after engaging in significant conditional certification discovery. *See* ECF No. 48. The Parties fully briefed the conditional certification issue. *See* ECF Nos. 53 (Response), 59 (Reply) and 65 (Surreply). After this Court granted Plaintiffs' Motion and authorized the issuance of notice to a nationwide class consisting of all hourly, non-exempt call-center employees who had worked for Chase within the previous three years (ECF No. 71), Chase first asked this Court to authorize an interlocutory appeal of the certification order (ECF No. 74) and then a Petition for Writ of Mandamus ("Petition") before the Fifth Circuit Court of Appeals. The Fifth Circuit ultimately denied the Petition but instructed this Court to "revisit" its order granting certification in light of its opinion. *See* ECF No. 87.

After receiving the ruling from the Fifth Circuit, and recognizing that the ultimate conditional certification decision could still favor either party, the Parties agreed to stay the case to allow them to negotiate a resolution of this case. The Parties agreed to mediate the case on May 21, 2019 in New York, New York with Michael E. Dickstein, one of the most well-respected wage and hour mediators in the United States. During mediation, the Parties reached an agreement fully resolving the claims between them—for both the FLSA collective action and the Rule 23 class action. Plaintiffs filed their unopposed motion for preliminary settlement approval and certification of the Rule 23 class for settlement purposes on November 13, 2019. *See* ECF No. 98. This Court granted Plaintiffs' motion and preliminarily approved the settlement agreement, certified a Rule 23 class action for settlement purposes, and authorized the form and content of the notices to be sent to the class members. *See* ECF No. 102.

# III.
# SUMMARY OF SETTLEMENT TERMS

The total gross settlement amount is $3,750,000.00. Included in that amount is Class Counsel's attorneys' fees and out-of-pocket expenses, settlement administration costs, a reserve fund of $100,000.00, and $20,000.00 in enhancement awards for the Named Plaintiffs and the Opt-In Plaintiffs who were deposed prior to mediation. Each member of the Rule 23 Settlement Class will receive their *pro rata* share of the net settlement fund (gross settlement sum less attorneys' fees, out-of-pocket expenses, settlement administration costs, the reserve fund, and enhancement awards) based on their Settlement Workweeks Percentages—a number unique to each class member calculated based on the number of weeks he or she worked during the Relevant Period.

The Settlement Administrator calculated a "Settlement Workweeks Percentage" to serve as the multiplier in calculating the settlement amount available to each Rule 23 Class Member. The calculation was performed as follows:

(a) **First**, the Administrative Costs, Reserve Fund, Class Counsel's requested attorneys' fees and costs, and Enhancement Awards were deducted from the Maximum Settlement Amount to create the Net Settlement Amount of 2,075,392.;

(b) **Second**, the Administrator added each Class Member's Workweeks to determine the Total Workweeks applicable to the class;

(c) **Third**, the Claims Administrator divided each Class Member's Workweeks by the Total Workweeks, and this quotient shall be the Class Member's Settlement Workweeks Percentage;

(d)    **Fourth**, each Class Member will have the Net Settlement Amount multiplied by his or her individual Settlement Workweeks Percentage. The resulting amount was the Class Member's Settlement Payment included with their claim form.

*See id.* at ¶ 3.8.1.

Moreover, the Settlement sets forth that fifty percent (50%) of all payments constitute wages and will accordingly be subject to W-2 reporting. Withholdings and normal payroll taxes will be deducted pursuant to state and federal law from this amount. Chase will be responsible for the employer portion of all such payroll taxes and withholdings. The Parties further agree that the remaining fifty percent (50%) constitutes payment for liquidated damages, prejudgment interest, and penalties, and will be reported on an IRS Form 1099. *See* Ex. A., ¶ 3.9.1.

## IV.
## CLASS RESPONSE TO NOTICE OF SETTLEMENT

This Court approved KCC, LLC ("KCC") to serve as the third-party administrator for the settlement class.[1] The 30-day notice period began on March 9, 2020, when KCC mailed 6,844 court-approved Class Notices to the Class Members.[2] A breakdown of the responses from the class members is as follows:

---

[1] *See* ECF No. 102.

[2] After the initial mailing, KCC re-mailed the notice forms that were otherwise returned as undeliverable. In totally, 161 notice packets were returned as undeliverable and 93 were subsequently re-mailed.

|  | NUMBERS | PERCENT OF TOTAL CLASS |
|---|---|---|
| **TOTAL CLASS MEMBERS** | 6,844 | 100% |
| **NOTICE SUCCESSFULLY MAILED** | 6796 | 99.29% |
| **CLAIM FORMS RETURNED** | 1676 | 24.48% |
| **OPT-OUTS RECEIVED** | 14[3] | 0.20% |
| **OBJECTIONS RECEIVED** | 0 | 0% |

*See* Declaration of Kristie Livingston, Senior Project Manager for KCC, LLC., attached as

**Exhibit A**. As indicated above, to date, no objections have been filed and only eleven class

members have chosen to opt-out of the settlement agreement. *See id.* The class notice advised

that they could submit an exclusion and/or objection to this Court and included the April 13,

2020 post-mark deadline. *See id.* To date, there is approximately 25% participation in the

settlement by the settlement class.

"A settlement notice need only satisfy the broad reasonableness standards imposed by

due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal

quotation marks omitted). "Notice is sufficient when it gives class members the information

that is reasonably necessary for them to decide whether to object to a settlement." *Cole v.

Collier*, No. 4:14-CV-1698, 2018 WL 2766028, at *3 (S.D. Tex. June 8, 2018), *appeal dismissed

sub nom. Brannum v. Collier*, 745 F. App'x 544 (5th Cir. 2018) (citing *In re Katrina Canal Breaches*

---

[3]      Of the 11 who submitted Opt-out forms, two also submitted Claim Forms.  KCC has mailed these
two individuals a Cure Letter to determine whether they intended to opt-out or join the settlement class..

*Litig.*, 628 F.3d at 197 and *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("The settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.") (internal quotation marks omitted)).

This Court previously determined that the Settlement Notice issued to the Members of the Class subject to its February 4, 2020 order provided sufficient notice to meet the above standard. *See* ECF No. 102; *see also Cole,* 2018 WL 2766028, at *3. Members of the Settlement Class received notice of the key terms of the proposed settlement. Each Settlement Class Member received a copy of the Class Action Notice, Claim Form and Opt-Out Form that were approved by this Court. *See* ECF No. 102. The Notice apprised Class Members of the pendency of this litigation; the elements of the Settlement benefitting the Class Members; that Class Counsel would be paid attorneys' fees and expenses out of the Settlement Fund, and subject to court approval, in connection with the Settlement Agreement, and that the Motion for Approval of the Settlement included a request for approval of such payment of fees and expenses; of the Class Members' opportunity to object and opt out of the Settlement Class; instructions for objecting or opting-out of the Settlement Class; the identity and contact information of Class Counsel; and of the date of the fairness hearing. *See* ECF No. 98-2.

As such, the Class Members have had a full opportunity to participate in the fairness hearing, including the opportunity for objectors to appear at the hearing, individually or through an attorney of their choosing, and to be heard on their objections. *See id.* As discussed in more detail above, fourteen (14) Class Members exercised their right to opt-out of the settlement, and no Class Members filed objections. *See* Exhibit A. Accordingly, the Parties

have established that adequate notice pursuant to Federal Rule of Civil Procedure 23(e) has been provided. *See* FED. R. CIV. P. 23(e); *Cole*, 2018 WL 2766028, at *3.

While Plaintiffs request that the Court grant final approval, they also request that the Court not enter its ruling until July 14, 2020 to allow for the 90-day period required under the Class Action Fairness Act ("CAFA") to expire. *See* 28 U.S.C. § 1715. CAFA notices were inadvertently not sent by Defendant until April 15, 2020, and CAFA requires that "an order giving final approval of a proposed settlement many not be issued earlier than ninety (90) days after the later of the dates on which the appropriate Federal official and the appropriate State official are served." *Id.* The Parties have agreed that Chase will fund the Qualified Settlement Fund during the interim period (by June 30, 2020) such that the payments required under the Settlement Agreement will issue by August 14, 2020, one day after a July 14, 2020 order granting final approval would no longer be appealable.[4]

## VI.
## LEGAL ANALYSIS SUPPORTING FINAL APPROVAL

"Federal Rule of Civil Procedure 23(e) establishes the requirements for settlement of a class action." *Cole*, 2018 WL 2766028, at *3. After preliminary approval and the issuance of a Court-approved settlement notice, courts can approve a proposed class action settlement after

---

[4] The request that the Court not grant final approval until July 14, 2020 and the Parties' agreement to expedite funding the Qualified Settlement Fund will delay the issuance of payments under the Settlement by approximately two weeks. Had CAFA notices issued within 10 days after the Court issued notice of preliminary approval, Plaintiffs would have had to request that the Court not grant final approval until May 18, 2020 to allow the 90-day CAFA notice period to expire. Based on the terms of the Agreement, were the Court to grant final approval on May 18, 2020, Chase would have funded the Qualified Settlement Fund on July 8, 2020, with payments issuing on July 29, 2020.

a "fairness hearing" and upon finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. Proc. 23(e)(2); *see also Cole*, 2018 WL 2766028, at *3.

## A. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

The Fifth Circuit has identified six factors that a court should consider when determining whether a proposed settlement is fair, reasonable, and adequate:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Cole*, 2018 WL 2766028, at *4. Courts have broad discretion when assessing these factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). In the end, the Court's determinations are no more than "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *City of Detroit v. Grinnell*, 495 F.2d 448, 468 (2d Cir. 1974)).

### 1. Whether the Settlement Was a Product of Fraud or Collusion

The settlement agreement between the parties was not a product of fraud or collusion—instead is was the result of arms-length negotiations during formal mediation. Settlement of this matter was reached after the Parties participated in formal mediation in New York, New York on May 21, 2020 with Michael E. Dickstein, one of the most well-respected and preeminent wage and hour mediators in the United States. The Parties mediated in good faith throughout the 15-hour mediation and did not reach a final agreement until close to 12:00

a.m. the next morning. Moreover, the Parties had previously engaged in substantial discovery prior to mediation, including written discovery and oral depositions across the United States.[5] Courts have determined that "[w]hen a class settlement is reached through arm's-length negotiations after meaningful discovery, a 'presumption of fairness, adequacy, and reasonableness may attach.'" *Cole*, 2018 WL 2766028, at *3 (quoting *Wal–Mart Stores*, 396 F.3d at 116). In fact "[t]he Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Id.* (quoting *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010)).

There is no evidence of collusion between the Parties. Indeed, the Parties vigorously litigated this case, argued multiple contested issues before this Court, and before the Fifth Circuit Court of Appeals. Further, the compromise reached by the Parties substantially benefits the Class and was reached after arm's-length negotiations that were conducted in good faith. This factor accordingly weighs in favor of approval of the Settlement.

### 2.      The Complexity, Expense, and Likely Duration of the Litigation

The complexity of this case, likelihood of delay, and the likelihood of *further* significant costs weigh in favor of approval of the Settlement. Although this case was filed in December 2018 and has at all times been aggressively litigated, substantial work remains should the Settlement Agreement not be approved. The Parties will be required to re-brief the issue of conditional certification of an FLSA collective action pursuant to the Fifth Circuit's guidance, engage in further merits-based discovery as to questions of liability and damages, brief

---

[5] The Parties conducted oral depositions in Phoenix, Arizona; Columbus, Ohio; Hot Springs, Arkansas; and, Houston, Texas.

dispositive motions, and prepare for trial on the merits. Absent settlement, it is reasonable to assume that this litigation will continue for years with no guarantee of eventual success for Plaintiffs or the Class Members. These facts favor settlement approval. *See Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cole*, 2018 WL 2766028, at *4.

Moreover, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This is doubly true in the wage and hour class and collective action context. *See Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *2 (S.D. Ohio Jan. 18, 2019) ("From the outset, the Court notes that wage and hour class and collective actions, such as this, are inherently complex and time-consuming.") (quoting *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014)). This case was no exception.

Here, as articulated above, the relative age of the claims, the procedural and evidentiary difficulty of defining liability and damages for individual claimants, and the possibly miniscule recovery (if any) all provide ample justification for the negotiated resolution of this complex wage and hour dispute.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The stage of the proceedings and the amount of discovery completed favor approval of the Settlement Agreement. This lawsuit has been pending for more than two years. *See* ECF No. 1. During that time, the Parties have engaged in substantial briefing of contested legal issues and have completed significant discovery. This was critical to ensure that Plaintiffs had access to enough information to evaluate their case and to reach a reasonable resolution of

this matter. *See Cole*, 2018 WL 2766028, at *5 (recognizing that there must be enough information about the legal and factual theories at issue to effectively negotiate the settlement agreement); *see also Kogan v. AIMCO Fox Chase, L.P.,* 193 F.R.D. 496, 502 (E.D. Mich. 2000). As a result, Plaintiffs had everything necessary to assess the strengths and weaknesses of their claims and to accurately calculate potential damages. Given the extensive discovery and prolonged litigation history, this Court should "defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Kogan*, 193 F.R.D. at 501 (quoting *Bronson v. Board of Educ.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)) (internal citations omitted).

### 4. The Probability of Success on the Merits

Plaintiffs' probability of success on the merits favors approval of the Settlement Agreement, recognizing that it is the most important of the factors to be considered in reviewing a settlement. *See Cole*, 2018 WL 2766028, at *5; *Parker*, 667 F.2d at 1209. In this case, there are disputed questions of liability and damages that could negatively affect the ability of the Rule 23 Class to succeed on the merits.

Legally, Plaintiffs would be required to show that they performed compensable work while off of the clock, and without pay.

> The Supreme Court has defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). This definition includes work performed off-duty. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (holding that employees must be compensated for activities performed for the employer before or after a regular work shift if the activities are an "integral and indispensable" part of the employees' principal activities). The definition even applies when the work is not requested but is "suffered or permitted." 29 C.F.R. § 785.11. "If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked." 29 C.F.R. § 785.12.

*Lewallen v. Scott Cty., Tenn.*, 724 F. Supp. 2d 893, 896 (E.D. Tenn. 2010). Defendant has consistently disputed that Plaintiffs and the Class Members performed **_any_** work while off-the-clock, and maintained that the work performed, if any, did not rise beyond the level of *de minimus* time, and that Defendant had no actual or constructive knowledge of the alleged off-the-clock work. While Plaintiffs remain confident that they could prevail on the initial question of liability, the result is far from certain.

Moreover, even if Plaintiffs successfully established that time spent logging into and out of their respective systems was compensable, Plaintiffs would be faced with the not insignificant hurdle of showing, through testimony and documentary evidence, the specific hours, times, and dates that they performed uncompensated work for Defendant. The required discovery for the Class Members would be both time-consuming and expensive, and, as applied to the Class, would involve considerable time costing the Parties hundreds of thousands, if not millions, of dollars.

### 5.    The Range of Possible Recovery

Approval of the Settlement Agreement is further warranted by looking at the range of possible recovery. Here, under the terms of the Settlement, the Class Members are to be paid based on the formula described above wherein each Class Member will be allocated a set amount, depending on the weeks they worked within the relevant time period. Should this case proceed, it is possible that Defendant will prevail on a dispositive motion or obtain a defense verdict at trial—outcomes that would provide Plaintiffs and Class Members with zero recovery. In contrast, if Plaintiffs were to prevail through trial on the merits, they would be entitled to varying amounts—specifically, Plaintiffs have alleged that they worked fifteen to

thirty minutes a day while off-the-clock and without pay, but have likewise acknowledged that others did not, and arrived consistently on time, or late for work. This range supports approval of the settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (recognizing that the complaint provides a benchmark against which courts can analyze the settlement agreement)

6.    **The Opinions of Class Counsel, Class Representatives, and Absent Class Members Favor Settlement**

The opinion of Class Counsel, Class Representatives, and the Absent Class Members favors settlement of this matter. "The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *Cole*, 2018 WL 2766028, at *5 (citing *DeHoyos v. Allstate Cor*p., 240 F.R.D. 269, 292 (W.D. Tex. 2007)). Here, Class Counsel, who have substantial experience litigating complex class and collective actions under the FLSA, view the Settlement as a significant victory for the Class. *See* Declaration of Clif Alexander, attached as **Exhibit B.** Likewise, Class Representatives Shannon Rivenbark and Kaylah Cassuccio have expressed pleasure with the Settlement Agreement and have voluntarily executed the same. *See* Exhibit B; *see also* ECF No. 98-1. In evaluating the opinions of Absent Class Members, it is recognized that those opinions can best be determined by looking at "both the number and nature of the objections to the settlement." *See Cole*, 2018 WL 2766028, at *6 (citing *Reed*, 703 F.2d at 174). Here, as of the date of the filing, no Class Member has objected to the terms of this Settlement Agreement despite having been informed of the means and method by which to do so. Accordingly, the opinions of the Absent Class Members also favor settlement of this matter.

## B. THE REQUESTED SERVICE AWARDS ARE REASONABLE

As the Supreme Court recently recognized, a class representative "might receive a share of class recovery above and beyond her individual claim." *China Agritech, Inc. v. Resh*, ___ U.S. ___, ___, 138 S.Ct. 1800, 1811, n.7 (2018). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) *rev'd*, 24 F. App'x 520 (6th Cir. 2001). Such awards are not uncommon. *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to class representatives. Moreover, incentive awards are appropriate in wage and hour cases because a named plaintiff's efforts "further[] the important public policies underlying the Fair Labor Standards Act." *Dillow*, 2018 WL 4776977, at *8.

Plaintiffs are seeking service awards in the total amount of $10,000.00 for Class Representatives Shannon Rivenbark and Kaylah Casuccio, and service awards of $2,000.00 for the Opt-In Plaintiffs who provided deposition testimony in support of their claims prior to mediation: Shannon Rivenbark[6], Deborah Moore[7], Carla Rigsby[8], Ineasha Day[9], and Denise Gunnoe[10]. In total, Plaintiffs seek approval for the amount of $20,000.00 of the

---

[6] Ms. Rivenbark was deposed in Houston, Texas and Hot Springs, Arkansas.

[7] Ms. Moore was deposed in Houston, Texas.

[8] Ms. Rigsby was deposed in Houston, Texas.

[9] Ms. Day was deposed in Phoenix, Arizona.

[10] Ms. Gunnoe was deposed in Columbus, Ohio.

Gross Settlement Amount to be allocated to service awards for the Class Representatives and the Opt-In Plaintiffs who provided depositions prior to mediation. These awards are reasonable and are well within the amounts approved by other courts in the Fifth Circuit. *See Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 WL 4419472, at *19 (W.D. Tex. May 23, 2016); *King v. United SA Fed. Credit Union*, 5:09-cv-00937-NSN, ECF No. 31 (W.D. Tex. Oct. 8, 2010) (awarding $15,000 to each of the two class representatives). Without these Plaintiffs' participation, this class settlement would not have occurred.

**C.    CLASS CERTIFICATION IS APPROPRIATE**

As detailed in the Parties' Joint Motion for Preliminary Settlement Approval (ECF No. 98), certification of a class action for settlement purposes is appropriate. *See* FED. R. CIV. P. 23(e). Those arguments remain and Plaintiffs incorporate them herein.

**D.    CLASS ADMINISTRATION COSTS ARE REASONABLE**

KCC, LLC ("KCC") was engaged by Counsel for the Parties to provide notification services in the *Rivenbark, et al. v. JPMorgan Chase & Co.* Settlement ("Settlement"). Ex. A. KCC formatted the Class List for mailing purposes, updated 470 addresses using the National Change of Address Database, printed and mailed Claim Forms to the Class Members, re-mailed undeliverable Claim Forms, and maintained a live telephone hotline, answering 191 calls on behalf of the 6,844 Class Members. KCC will further distribute the Settlement Payments following final approval of the Settlement. As compensation for their services, the Parties seek approval of the $59,608 invoiced by KCC for their services in administering the

Settlement. The Parties agree that the requested amount is reasonable and commensurate with the costs associated with administering complex Rule 23 settlement agreements.

## E.     SETTLEMENT OF CLASS ACTION CLAIMS IS FAVORED

There is a strong federal policy encouraging settlement of class actions. *See Cole*, 2018 WL 2766028, at *4. Both judicial and public policy favor compromise of class actions. *See id.* (citing *Wal–Mart Stores. Inc. v. Visa U.S.A., Inc.*,396 F.3d 96, 116 (2d Cir. 2005)); *UAW, et al. v. General Motors Corp.*, 497 F. 3d 615, 632 (6th Cir. 2007); *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979). The district court's role in evaluating a proposed settlement is to ensure that the that the agreement is not a product of fraud or collusion and that the settlement, taken as a whole, is fair, reasonable, and adequate. *See Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615 (9th Cir. 1982). If the Court finds that the settlement is fair, reasonable, and adequate, approval of the settlement is appropriate. *See Cole*, 2018 WL 2766028 at *3; *In re Broadwing, Inc. ERISA Litig.*, 252 F. R.D. at 381–82.

## VII.
## CONCLUSION

Because the proposed Settlement is fair, adequate and reasonable, the Court should GRANT the Joint Motion for Final Approval of Rule 23 Class Action Settlement. A proposed Order, **which the Parties respectfully request that the Court not enter until at least July 14, 2020**, is attached for the Court's consideration as **Exhibit C**.

Date: April 15, 2020                                Respectfully submitted,

                                        By:     /s/ Clif Alexander
                                                Clif Alexander
                                                Federal I.D. No. 1138436
                                                Texas Bar No. 24064805

clif@a2xlaw.com
Austin W. Anderson
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
Lauren E. Braddy
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
Alan Clifton Gordon
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
Carter T. Hastings
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander