## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SHANNON RIVENBARK and KAYLAH CASUCCIO, Individually and on behalf of all others similarly situated | § § § | Civil Action No. 4:17-cv-03786 |
| | § | JURY TRIAL DEMANDED |
| *Plaintiffs*, | § § | |
| | § | COLLECTIVE ACTION |
| v. | § | PURSUANT TO 29 U.S.C. § 216(b) |
| | § | |
| JPMORGAN CHASE & CO. | § | CLASS ACTION PURSUANT TO |
| | § | FED. R. CIV. P. 23(b) |
| *Defendant.* | § | |

---

## PLAINTIFFS' UNOPPOSED MOTION TO APPROVE AN AWARD OF ATTORNEYS' FEES AND LITIGATION COSTS

---

Plaintiff Shannon Rivenbark and Kaylah Casuccio, individually and on behalf of all Opt-In Plaintiffs and Class Members (collectively "Plaintiffs"), file this Unopposed Motion to Approve an Award of Attorneys' Fees and Litigation Costs ("Motion") pursuant to the provisions set forth by Rule 23(h) of the Federal Rules of Civil Procedure, and ask that the Court approve the negotiated award of attorneys' fees and costs included in the settlement agreement between the parties.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.   Procedural History .......................................................................................................... 1

II.  Summary of Argument ..................................................................................................... 2

III. Argument & Authorities .................................................................................................. 3

    A.  The Percentage of the Fund Method is Appropriate for Common Fund Cases
        Such as This One ........................................................................................................ 3

    B.  Alternatively, A Cross-Check Utilizing the Lodestar Method and *Johnson* Factors
        Support The Required Fee and Cost Award ............................................................... 7

        1.  Lodestar Calculation: Reasonable Hourly Rate ........................................... 8

            a.  Plaintiffs' Attorneys' Biographic Information .................................. 8

            b.  Evidence of Reasonable Rate ............................................................ 12

        2.  Lodestar Calculation: Reasonable Number of Hours Expended ........................ 13

        3.  Upward Departure Under the *Johnson* Factors is Warranted ............................... 13

            a.  Time and Labor Required .................................................................. 14

            b.  Novelty and Difficulty of Question Presented by the Case ........................ 15

            c.  Skill Required and Ability of Plaintiffs' Counsel ............................. 15

            d.  The Undesirability of the Case and the Preclusion of Other
                Employment by the Attorneys to Acceptance of the Case........................... 15

            e.  Customary Fee Awards in Similar Cases and Plaintiffs' Contingency
                Fee Agreement ..................................................................................... 16

            f.  Amount Involved and Results Obtained ............................................ 16

            g.  Any Time Limitations Imposed by the Client or the Circumstances.......... 17

            h.  The Undesirability of the Case and the Preclusion of Other
                 Employment by the Attorneys due to Acceptance of the Case .................... 17

        4.  Plaintiffs' Required Fee Award if Justified............................................. 17

    C.  Plaintiffs' Counsel's Litigation Costs and Expenses are Reasonable ........................ 18

IV.  Conclusion........................................................................................................................ 18

CERTIFICATE OF SERVICE ........................................................................................... 20

\

# TABLE OF AUTHORITIES

## Cases

*Bass v. Berry Bros. Gen. Contractors, Inc.*, No. 6:17-cv-00947 (W.D. La. Apr. 1, 2020)................................................................................................................15

*Besey v. Packerland Plainwell, Inc.*, No. 06-cv-95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) .......................................................................................5

*Buckhannon Bd. And Care Home, Inc. v. W.V. Dep't of Health & Human Resources*, 532 U.S. 598 (2001) ...............................................................................2

*Garcia v. Maint., Inc.*, No. 05-cv-03924 (S.D. Tex. June 16, 2006).....................7, 8, 20

*Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 4867226 (D. Kan. Oct. 15, 2012) ......................................................................................................17

*in re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)................................................................................................................5

*In re Cendant Corp. Sec. Litig. ("Cendant I")*, 264 F.3d 201 (3d Cir. 2001)...................10

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) ...............................................................................3, 4, 5, 6, 9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)........................................................................................7

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..............................................................4, 5

*In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) ..............................................17

*In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F.Supp.2d 1143 (D. Colo. 2009) .................................................................................19, 21

*In re Terra-Drill Partnerships Sec. Litig.*, 733 F. Supp. 1127 (S.D. Tex. 1990) ................................................................................................................16

*Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974) .............................9, 16

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 791 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010)..........................................7

*Lopez v. LPE, Inc.*, 2:19-cv-00111 (S.D. Tex. Jan. 30, 2020) ...........................................15

*Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2008 WL 5140045 (S.D. Tex. Dec. 8, 2008) .................................................................2, 3, 16

*Roussel v. Brinker Int'l, Inc.,* No. CIV.A.H-05-3733, 2010 WL 1881898 (S.D. Tex. Jan. 13, 2010) ........................................................................14

*Skadowski v. KBR Tech Servs., Inc.,* No. 4:05-cv-4124 (S.D. Tex. Aug. 25, 2006)..............................................................................................................7

*Strong v. Bellsouth Telecomms.,* 137 F.3d 844 (5th Cir. 1998) .............................3

*Tex. State Teachers Ass'n v. Garland Indp. Sch. Dist.,* 489 U.S. 782 (1989) ........................2

*Tollett v. City of Kemah,* 285 F.3d 357 (5th Cir. 2002) ....................................10

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632 (5th Cir. 2012) ........................................................................................................4

*Vela v. City of Hous.,* 276 F.3d 659 (5th Cir. 2001)....................................6, 8

*Watkins v. Input/Output, Inc.,* 531 F. Supp. 2d 777 (S.D. Tex. 2007) ...........11

*Wolfe v. Anchor Drilling Fluids USA Inc.,* Cause No. 4:14-cv-1344, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015) ................................................6, 8, 19

# I.
## PROCEDURAL HISTORY

On December 14, 2017, Shannon Rivenbark filed this lawsuit against JPMorgan Chase Bank, N.A., improperly named as J.P. Morgan Chase & Co., ("Chase") in the United States District Court for the Southern District of Texas, Houston Division. *See* ECF No. 1. Through the First Amended Complaint filed on February 16, 2018, Shannon Rivenbark and Kaylah Casuccio brought a proposed class and collective action under the FLSA, the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the Ohio Prompt Pay Act ("OPPA") (together with the OMFWSA, the "Ohio Acts"), and the Texas common law. *See* ECF No. 13.

On May 18, 2018, Plaintiffs filed their Motion for Conditional Certification and Notice to the Putative Class Members after engaging in significant conditional certification discovery. *See* ECF No. 48. The Parties fully briefed the conditional certification issue. *See* ECF Nos. 53 (Response), 59 (Reply) and 65 (Sur-Reply). After this Court granted Plaintiffs' Motion and authorized the issuance of notice to a nationwide class consisting of all hourly, non-exempt call-center employees who had worked for Chase within the previous three years (ECF No. 71), Chase first asked this Court to authorize an interlocutory appeal of the certification order (ECF No. 74) and then a Petition for Writ of Mandamus ("Petition") before the Fifth Circuit Court of Appeals. The Fifth Circuit ultimately denied the Petition but instructed this Court to "revisit" its order granting certification in light of its opinion. *See* ECF No. 87.

After receiving the ruling from the Fifth Circuit, and recognizing that the ultimate conditional certification decision could still favor either party, the Parties agreed to stay the case to allow them to negotiate a resolution of this case. The Parties agreed to mediate the case on May 21, 2019 in New York, New York with Michael E. Dickstein, one of the most

well-respected wage and hour mediators in the United States. During mediation, the Parties reached an agreement fully resolving the claims between them—for both the FLSA collective action and the Rule 23 class action. Plaintiffs filed their unopposed motion for preliminary settlement approval and certification of the Rule 23 class for settlement purposes on November 13, 2019.[1] *See* ECF No. 98. This Court granted Plaintiffs' motion and preliminarily approved the settlement agreement, certified a Rule 23 class action for settlement purposes, and authorized the form and content of the notices to be sent to the class members. *See* ECF No. 102.

## II.
## SUMMARY OF ARGUMENT

Under the FLSA, a prevailing party is entitled to recover their reasonable and necessary attorneys' fees and litigation costs. *See* 29 U.S.C. § 216(b). A plaintiff is a prevailing party in the context of a settlement agreement. *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2008 WL 5140045, at *2 (S.D. Tex. Dec. 8, 2008) (citing *Tex. State Teachers Ass'n v. Garland Indp. Sch. Dist.*, 489 U.S. 782, 791 (1989); *Buckhannon Bd. And Care Home, Inc. v. W.V. Dep't of Health & Human Resources*, 532 U.S. 598 (2001)). Under the terms of the Settlement Agreement, Plaintiffs' counsel is entitled to recover no more than $1,425,000.00 in reasonable attorneys' fees for the hours worked in the prosecution of this case and $64,683.61 in reasonable and necessary litigation expenses and costs. The requested fee amount constitutes less than 40% of the Gross Settlement Fund and should be approved utilizing the "percentage of the fund"

---

[1] Plaintiffs filed a Second Amended Complaint on February 20, 2020. ECF No. 105

method.[2] Alternatively, the requested fee amount is also fair and reasonable according to the lodestar method as the hourly rates requested are reasonable and in line with the market rates in the area; and the hours billed were reasonable, necessary, and aided the advancement of the litigation.

# III.
# ARGUMENT & AUTHORITIES

Pursuant to 29 U.S.C. § 216(b) and Rule 23(h) of the Federal Rules of Civil Procedure, Plaintiffs' Counsel are entitled to recover a reasonable fee.[3] As part of its fairness determination under both Section 216(b) and Rule 23(h), the Court must determine that the proposed attorneys' fees are reasonable. *See Strong v. Bellsouth Telecomms.*, 137 F.3d 844, 849–50 (5th Cir. 1998); FED. R. CIV. P. 23(h). Here, Plaintiffs' Counsel are seeking to recover a percentage of the common settlement fund at issue in this litigation. Plaintiffs contend that the requested fee amount is reasonable under controlling precedent and is supported by a lodestar cross-check.

## A.  THE PERCENTAGE OF THE FUND METHOD IS APPROPRIATE FOR COMMON FUND CASES SUCH AS THIS ONE

In common-fund cases, district courts generally award attorneys' fees using one of two methods: "(1) the percentage method, in which the court awards fees as a reasonable

---

[2] Specifically, and pursuant to the Settlement Agreement, Plaintiffs' Counsel is entitled to attorneys' fees and costs at a rate of no more than 38% of the Gross Settlement Fund.

[3] The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b*); Prater*, 2008 WL 5140045, at *2. Moreover, Federal Rule of Civil Procedure 23(h) addresses the issues of attorney's fees and nontaxable costs and provides in relevant part: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *See In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d 732, 745 (S.D. Tex. 2008).

percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1071 (S.D. Tex. 2012) (citing *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)).

"The United States Supreme Court has held that the application of the percentage method is proper for determination of a reasonable fee award in common fund cases." *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d at 745 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984)). The percentage of the fund method is appropriate in wage and hour cases where, as here, "the damages which could have been claimed by each class member [are] relatively modest . . . for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Besey v. Packerland Plainvell, Inc.*, No. 06-cv-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007). The percentage of the fund method is preferable as it encourages efficiency, judicial economy, and aligns the interests of lawyers with the class. *See in re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 761–62 (S.D. Ohio 2007).

Not only has the percentage method achieved Supreme Court approval, "[m]ost federal courts use the percentage of the fund approach in awarding attorneys' fees in common fund classes." *See In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d at 748. In *Dell*, the Fifth Circuit confirmed that district courts have discretion to determine the proper fee award in common-fund cases by using either the percentage or lodestar methods, cross-checked with the *Johnson* factors. *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,

851 F. Supp. 2d at 1072 (citing *Dell* 669 F.3d 632). Additionally, in *Longden v. Sunderman*, the Fifth Circuit affirmed a percentage fee award and noted that "the district court had stated its preference for the percentage-of-recovery method 'as a matter of policy.'" 979 F.2d 1095, 1100 n. 11 (5th Cir.1992).

In recommending the use of the percentage method when a common settlement fund is created, the influential Third Circuit Task Force's Report determined

> that a lodestar approach (1) "increases the workload of an already overtaxed judicial system"; (2) is "insufficiently objective and produce[s] results that are far from homogenous"14; (3) "creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law"; (4) "is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount"; (5) "encourages lawyers to expend excessive hours, . . . engage in duplicative and unjustified work, inflate their 'normal' billing rate, and include fictitious hours or hours already billed on other matters, perhaps in the hope of offsetting any hours the court may not allow"; (6) "creates a disincentive for early settlement of cases"; (7) "does not provide the district court with enough flexibility to reward or deter lawyers to that desirable objectives, such as early settlement will be fostered"; and (8) "works to the particular disadvantage of the public interest bar" by undermining the efficacy of many of the fee statutes that Congress has enacted because the lodestars in the "money" cases, such as securities, "are set higher than in cases under statutes promoting nonmonetary social objectives such as the Civil Rights Attorneys Fees Awards Act of 1976."

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d at 746–47 (quoting *The Third Circuit Task Force Report on Selection of Class Counsel*, 208 F.R.D. 340, 421 (Jan. 15, 2002) ("2002 Task Force Report") (internal citations omitted).

The customary percentage for this type of litigation is "35 to 40 percent." *Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001) (evaluating a common fund in an FLSA collective action); *Wolfe v. Anchor Drilling Fluids USA Inc.*, Cause No. 4:14-cv-1344, 2015 WL 12778393 (S.D. Tex. Dec. 7, 2015) (approving an award of 40% of the common fund); *Skadowski v. KBR*

*Tech Servs., Inc.*, No. 4:05-cv-4124, ECF No. 25 (S.D. Tex. Aug. 25, 2006)[4] (approving an award of 40% of the common fund) (attached as Ex. B); *Garcia v. Maint., Inc.*, No. 05-cv-03924, ECF No. 57 (S.D. Tex. June 16, 2006)[5] (same) (attached as Ex. C); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (recognizing that, in common fund cases, "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund"). In determining the percent of the fund owed to counsel, it is ultimately the court's duty to ensure that the fee amount is fair to both counsel and the class. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 791 (N.D. Ohio 2010), *on reconsideration in part* (July 21, 2010). "Further, cases in which courts have found considerably lower percentage awards appropriate tend to be 'mega cases,' with common funds exceeding $100 million." *Id.* (quoting *Klein*, 705 F. Supp. 2d at 675).

Here, the fee agreement between Representative Plaintiffs and Plaintiffs' Counsel provides for attorneys' fees of 40% of the Gross Settlement Amount. *See* Declaration of Clif Alexander, hereby attached as Exhibit A. Although entitled to receive 40% of the fund in fees pursuant to the fee agreement, Plaintiffs' Counsel is only seeking to recover 38% of the fund in fee. Plaintiffs contend that the requested fee amount of $1,425,000.00—38% of the gross settlement amount—is appropriate herein pursuant to the percentage of the fund method. *See, e.g., Vela.*, 276 F.3d at 681; *Wolfe*, 2015 WL 12778393 *Skadowski*, No. 4:05-cv-4124, ECF No. 25; *Garcia*, No. 05-cv-03924, ECF No. 67; *Lee*, 2015 WL 13729679, at *7; *Klein*, 705 F. Supp.

---

[4] The motion for approval of the fees in the *Skadowski* matter is hereby attached as Exhibit B.

[5] The motion for approval of the fees in the *Garcia* matter is hereby attached as Exhibit C.

2d at 675; *In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *4. It not only equates to a lesser amount than provided for by the fee agreement with the Representative Plaintiffs but it is agreed to by Defendant in the Settlement Agreement at issue. *See* ECF No. 98-1. Perhaps most importantly, however, the requested fee amount did not garner **_any_** objection from the Class Members despite being fully disclosed in the Notice sent to the Class Members. *See* Declaration of Kristie Livingston, Senior Project Manager for KCC, LLC, at ECF No. 107-1. (advising that no objections to the Settlement Agreement had been received as of April 13, 2020 objection deadline).

## B. ALTERNATIVELY, A CROSS-CHECK UTILIZING THE LODESTAR METHOD AND *JOHNSON* FACTORS SUPPORT THE REQUESTED FEE AND COST AWARD

While Plaintiffs contend that the percentage of the fund method is the appropriate method courts should (and do) follow in award attorneys' fees in common-fund cases, Plaintiffs recognize that some courts continue to utilize the lodestar method for awarding attorneys' fees. Under the lodestar method, the upward or downward adjustment is based on a court's review of the *Johnson* factors set out by the Fifth Circuit. *See generally Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). The twelve Johnson factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.*; *Dell*, 669 F.3d at 642 n. 25. "The Johnson factors are intended to ensure 'a reasonable fee [ ]'" and "[t]he purpose of a lodestar cross-check of the results of a percentage fee award is to

avoid windfall fees, i.e., to 'ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple." *Dell*, 669 F.3d at 642 n. 25; *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 586 F. Supp. 2d at 751 (quoting *In re Cendant Corp. Sec. Litig. ("Cendant I")*, 264 F.3d 201, 285 (3d Cir. 2001)). "A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier." *Id.*

Plaintiffs will show that the requested attorneys' fees are fair and reasonable under the applicable lodestar cross-check as well.

1.      *Lodestar Calculation: Reasonable Hourly Rate*

To calculate the loadstar, this Court must first determine the reasonable number of hours expended on the litigation and the reasonable hourly rate for the participating attorneys. *Id.* The lodestar is then computed by multiplying the number of hours reasonably expended by the reasonable hourly rate.

The first step in computing the lodestar is determining the reasonable hourly rate. To do this, courts look to the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community. *See Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002). To establish the reasonable hourly rate, Plaintiffs' Counsel rely on their declaration and rates actually billed (and paid) in similar lawsuits within the Southern District of Texas and in the Fifth Circuit *See Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007); *see also* Exhibit A.

   a.      **Plaintiffs' Attorneys' Biographic Information**

Clif Alexander took a lead role in this litigation. Mr. Alexander focuses his practice on

representing wage and hour clients throughout the United States—he has been lead counsel in more than 300 individual, collective, and class action wage and hour cases across the United States. Mr. Alexander has dedicated his career to handling complex class, collective, and mass action litigation on behalf of Plaintiffs in many types of cases and has worked predominately in the labor and employment context for almost ten years. Mr. Alexander is a 2008 graduate of South Texas College of Law—Houston. Mr. Alexander further represents his clients' interest through leadership positions in state and local organizations, in addition to membership in national and practice specific organizations. Since 2015, for example, Mr. Alexander has served on the Texas Trial Lawyers Association's Board of Advocates/New Lawyers Division and was the President of the Corpus Christi Young Lawyers Association from 2015 until 2016. Mr. Alexander has been recognized by his peers for his exemplary performance and has been named a "Rising Star" in the Texas Monthly magazine for the preceding six years. Mr. Alexander is a zealous advocate for his clients and a dedicated lawyer. Mr. Alexander's hourly rate is $500.00. *See id.*

Austin W. Anderson also took a lead role in this litigation. Mr. Anderson focuses his practice on representing wage and hour clients throughout the United States—he has been lead counsel in more than 200 individual, collective, and class action wage and hour cases across the United States and has extensive experience litigating mass actions against corporate defendants. Mr. Anderson has dedicated his career to handling complex class, collective, and mass action litigation on behalf of Plaintiffs in many types of cases, and has worked predominately in the labor and employment context for over five years. Mr. Anderson is a zealous advocate for his clients and a dedicated lawyer. Mr. Anderson graduated with honors

from St. Mary's School of Law and also holds an LLM in Trial Advocacy. Mr. Anderson's hourly rate is $500.00.

Lauren Braddy, an attorney with Anderson Alexander, PLLC, also worked on this case. Ms. Braddy began working with Anderson Alexander, PLLC in 2015, and since that time has practiced almost exclusively wage and hour litigation from the inception of the initial client contact through appeal, when necessary. During that time, she has been counsel in over 100 individual, collective, and class action wage and hour cases across the United States— representing thousands of workers. Ms. Braddy works diligently to ensure that that her clients receive the compensation legally owed to them and to effectively communicate with the clients through all phases of the litigation. Ms. Braddy graduated from Baylor Law School in 2010 with honors. Before joining Anderson Alexander, PLLC, Ms. Braddy worked as a briefing attorney for the Thirteenth Court of Appeals in Corpus Christi, Texas. In addition to a robust litigation docket, Ms. Braddy further represents her clients' interests through leadership positions in local organizations, in addition to membership in state and national advocacy organizations. Ms. Braddy was a long-time executive board member for the Corpus Christi Young Lawyers Association and served on the board of directors for six years from 2010 through 2017. Ms. Braddy additionally serves as an active board member for the Coastal Bend Women Lawyers' Association ("CBWLA") and has long been a member of the CBWLA's board of directors. Ms. Braddy has also been recognized by her peers for her legal expertise and has been named a "Rising Star" in Texas Monthly Magazine on six separate occasions. Ms. Braddy's hourly rate is $400.00. *See id.*

Cliff Gordon, an attorney with Anderson Alexander, PLLC, also worked on this case.

Mr. Gordon has been a practicing attorney for almost twenty-five years and has worked in complex civil litigation as both a defense and plaintiffs' attorney. Mr. Gordon began working with Anderson Alexander, PLLC in 2016 and since that time has practiced almost exclusively in wage and hour litigation wherein he has represented thousands of workers in individual, collective, and class action lawsuits across the United States. Mr. Gordon works diligently to ensure that that his clients receive the compensation legally owed to them and to effectively communicate with the clients through all phases of the litigation. Mr. Gordon obtained his undergraduate degree from Yale University and is a 1995 graduate of the University of Houston Law Center. Mr. Gordon's hourly rate is $450.00. *See id.*

Geordie Schimmel, a former attorney with Anderson Alexander, PLLC, also worked on this case. Mr. Schimmel joined Anderson Alexander, PLLC after representing companies in the labor and employment law context in proceedings before various administrative agencies including the Equal Employment Opportunity Commission, the U.S. Department of Labor, and the Texas Workforce Commission. Mr. Schimmel also served for ten (10) of years as a prosecutor in Nueces County where he obtained significant trial experience. Mr. Schimmel graduated from the University of Texas School of Law in 2001 and his hourly rate was $400.00. *See id.*

Carter Hastings, an attorney with Anderson Alexander, PLLC, also worked on this case. Mr. Hastings began working with Anderson Alexander, PLLC in 2017, and since that time has practiced almost exclusively in wage and hour litigation. Mr. Hastings has diligently represented workers in class, collective action, and individual lawsuits across the United States. Mr. Hastings graduated from Southern Methodist University's Dedman School of Law in

2016, and since returning to Corpus Christi, Texas, has become an active member in the local bar association, and is currently serving his second-year term as a director of the Corpus Christi Young Lawyers' Association. Mr. Hastings' hourly rate is $350.00. *See id.*

### b. Evidence of Reasonable Rate

In this legal community, the market rates for complex litigation—like collective actions filed pursuant to 29 U.S.C. § 216(b)—support an hourly rate of upwards of $500.00 for partners, and upwards of $350.00 for junior associate attorneys. In fact, the undersigned Plaintiffs' Counsel have previously had their rates approved by district courts in the Southern District of Texas and the Fifth Circuit, in addition to other courts throughout the United States. *See Roussel v. Brinker Int'l, Inc.,* No. CIV.A.H-05-3733, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), *aff'd sub nom. Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222 (5th Cir. 2011) (recognizing that rates ranging from $500.00 an hour to $250.00 an hour were reasonable in the Southern District of Texas); *Lopez v. LPE, Inc.*, 2:19-cv-00111, ECF Nos. 25 (S.D. Tex. Jan. 30, 2020) (approving the hourly rates requested herein) (attached as Exhibit D)[6]; *Bass v. Berry Bros. Gen. Contractors, Inc.*, No. 6:17-cv-00947, ECF No. 40 (W.D. La. Apr. 1, 2020) (approving the hourly rates requested herein) (attached as Ex. E),

Accordingly, Plaintiffs' Counsel's respective hourly rates are reasonable considering the skill and expertise of the attorneys involved, and are additionally supported by awards from multiple courts throughout the United States, and most importantly, by courts in the Southern District of Texas.

---

[6] The motion seeking fees and costs and setting forth the above described hourly rates is hereby attached as Exhibit D.

2. *Lodestar Calculation: Reasonable Number of Hours Expended*

Plaintiffs' Counsel have reasonably expended over 3,000 hours in the investigation, prosecution (and appeal) of this matter in support of Plaintiffs' claims against Defendant. *See* Ex. A. Using a weighted average of an hourly rate of $433.00, the attorneys' fees at issue total over $1,300,000.00. *See id.* Although the lodestar figure is slightly lower than the fee amount sought to be recovered, application of the *Johnson* Factors shows that Plaintiffs' counsel is entitled to an enhanced multiplier. *See In re Terra-Drill Partnerships Sec. Litig.,* 733 F. Supp. 1127, 1131 (S.D. Tex. 1990) (awarding a 2 and ½ times multiplier to support a fee award of $3,840,000.00)

3. *Upward Departure Under the Johnson Factors Is Warranted*

After calculating the lodestar, the Court must consider whether to adjust the fee upward or downward. *Prater*, 2008 WL 5140045, at *3. After calculating the lodestar, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* The twelve factors enumerated in *Johnson* are as follows:

> (1) the time and labor required to represent the client or clients;
>
> (2) the novelty and difficulty of the issues in the case;
>
> (3) the skill required to perform the legal services properly;
>
> (4) the preclusion of other employment by the attorney;
>
> (5) the customary fee charged for those services in the relevant community;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or circumstances;

(8) The *amount involved and the results obtained;*

(9) the *experience, reputation, and ability of the attorney*;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Johnson,* 488 F.2d at 717–19 (emphasis added).

### a.    Time and Labor Required

Plaintiff Rivenbark filed this matter on December 14, 2017 and have aggressively litigated it since that date. *See* Ex. A. Prosecuting this matter to a successful settlement for the benefit of the Plaintiffs and the Class Members required Plaintiffs' Counsel to expend a significant amount of time and resources, including substantial legal and factual research and engaging in settlement negotiations. Litigating hybrid collective/class wage and hour actions involves fact-intensive investigation into issues that require a large time investment, in addition to skill and experience. *See Grove v. ZW Tech, Inc.*, No. 11-2445-KHV, 2012 WL 4867226, at *5 (D. Kan. Oct. 15, 2012) (recognizing that FLSA collective actions require an extensive time commitment, skill, and expertise by experienced plaintiffs' counsel). In addition to the complex legal issues implicated by the claims raised herein, Plaintiffs' Counsel were also required to litigate matters of first impression before this Court and the Fifth Circuit Court of Appeals. *See In re JPMorgan Chase & Co.*, 916 F.3d 494, 499–500 (5th Cir. 2019) (commending

the attorneys for "excellent briefing and advocacy" and recognizing that the issues before the court involved questions of first impression for appellate courts).

The time and labor expended are substantial and support an enhancement of the requested fee.

### b. Novelty and Difficulty of Question Presented by the Case

Representing Plaintiffs in a typical lawsuit under the FLSA involves a specialized area of the law and requires counsel with the requisite experience. Here, not only did the Parties vociferously litigate a hybrid class/collective action, but it was an action that involved novel questions of first impression. Not only had the Fifth Circuit not addressed some of the issues raised herein, but it recognized that no higher court had previously weighed in on the notice issues involved. *See id.* at 499–500 (5th Cir. 2019) (recognizing that "[f]ederal district courts have splintered over [the issue] and no court of appeals has weighed in").

### c. Skill Required and Ability of Plaintiffs' Counsel

Plaintiffs' Counsel addressed the requisite skills and abilities of the undersigned counsel when addressing the reasonability of the requested rates. *See* Exhibit A. Additionally, the Fifth Circuit commended Plaintiffs' Counsel for their advocacy in this matter, especially in light of the deadlines at issue. *See id.* at 497. Moreover, another district court recently recognized the skill and experience of the undersigned counsel in approving their requested fee award. *See* Ex. E Plaintiffs' Counsel have thereby established that they had the requisite reputation, skill, and specialized experience to perform the legal services required in this complex litigation.

### d. The Undesirability of the Case and the Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

Addressing the fourth and tenth factors, Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs in this case. Wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them. *See In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F.Supp.2d 1143, 1152–53 (D. Colo. 2009). Plaintiffs' Counsel is limited by time and cannot pursue every wage and hour claim and must necessarily choose which clients they will be able to represent, considering the time and expense inherent in every case. This case required Plaintiffs' Counsel to expend significant time and resources, as discussed above, and therefore precluded them from accepting other clients in the interim.

### e. Customary Fee Awards in Similar Cases and Plaintiffs' Contingency Fee Agreement.

Addressing factors five and twelve, Plaintiffs' requested fee award is on par with other fee awards in similar related cases. It is customary for counsel to receive a percentage of the fund, as discussed above. *See Vela.*, 276 F.3d at 681; *Wolfe*, 2015 WL 12778393 *Skadowski*, No. 4:05-cv-4124, ECF No. 25 at Ex. B; *Garcia*, No. 05-cv-03924, ECF No. 57 at Ex. C; *Lee*, 2015 WL 13729679, at *7; *Klein*, 705 F. Supp. 2d at 675; *In re Harrah's Entm't, Inc.*, 1998 WL 832574, at *4. Here, each Plaintiff makes a substantial recovery on their claims.

### f. Amount Involved and Results Obtained

Here, the Gross Settlement Amount represents a significant recovery on behalf of Plaintiffs and the Class Members—Defendant raised strong arguments that Plaintiffs had been properly paid for all of their compensable time. In sum, the Gross Settlement Amount wherein Plaintiffs and the Class Members are being compensated for a significant amount of their

unpaid wages and overtime represents an excellent result given the circumstances of the case, and thus, the "amount involved and results obtained" factor supports the proposed fee award.

### g. Any Time Limitations Imposed by the Client or the Circumstances

The FLSA provides a maximum three-year statute of limitations on claims. *See* 29 U.S.C. § 255(a). The statute of limitations for the FLSA claims of potential opt-in plaintiffs is not tolled by the filing of the complaint, but rather by an opt-in plaintiff filing his/her written consent with the court. *See id.* Here, Plaintiffs aggressively pursued conditional certification of the FLSA action. Plaintiffs' Counsel contends that the time limitations involved support the requested fee award.

### h. The Undesirability of the Case and the Preclusion of Other Employment by the Attorneys due to Acceptance of the Case

Addressing factors four and seven, Plaintiffs' Counsel undertook significant risk in agreeing to represent Plaintiffs in this case. Wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them. *See In re Qwest Communications Intern., Inc. Securities Litigation*, 625 F. Supp. 2d at 1152–53. Plaintiffs' Counsel is limited by time and cannot pursue every wage and hour claim and must necessarily choose which clients they will be able to represent, considering the time and expense inherent in every case.

### 4. *Plaintiffs' Requested Fee Award Is Justified*

Plaintiffs have established that Plaintiffs' Counsel is entitled to the fee award requested. An analysis of the lodestar amount, considered in conjunction with the *Johnson* Factors, shows that the fee award requested is fair and reasonable.

## C. PLAINTIFFS' COUNSEL'S LITIGATION COSTS AND EXPENSES ARE REASONABLE

Pursuant to the Settlement Agreement, Plaintiffs' Counsel is entitled to recover up to $70,000.00 in litigation costs and expenses. *See* ECF No. 98-1. Here, Plaintiffs' Counsel seeks to recover $64,683.61 in litigation costs and expenses reasonably expended in the prosecution of this litigation. *See* Exhibit A.

## IV.
## CONCLUSION

Plaintiffs have submitted evidence before this Court in support of their requested fee and have further provided sufficient evidence to support their reasonable and necessary litigation costs. Plaintiffs have further established that the *Johnson* Factors warrant an upward departure from the established lodestar. Plaintiffs therefore respectfully request that this Court approve the requested fee and cost amount.

Date: April 15, 2020                    Respectfully submitted,

                                        **ANDERSON ALEXANDER, PLLC**

                             By:        /s/ *Clif Alexander*
                                        **Austin W. Anderson**
                                        Federal I.D. No. 777114
                                        Texas Bar No. 24045189
                                        austin@a2xlaw.com
                                        **Clif Alexander**
                                        Federal I.D. No. 1138436
                                        Texas Bar No. 24064805
                                        clif@a2xlaw.com
                                        **Lauren E. Braddy**
                                        Federal I.D. No. 1122168

Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
**Carter T. Hastings**
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Attorneys for Plaintiffs and the Class Members*

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Defendant's Counsel of Record and Defendant is unopposed to the filing of this Motion and the relief requested herein.

*/s/ Clif Alexander*
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Clif Alexander*
Clif Alexander